**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **REMARKABLE HEALTHCARE OF** | § | **CASE NOS. 24-40612 & 24-40611** |
| **SEGUIN LP AND REMARKABLE** | § | |
| **HEALTHCARE LLC,**[1] | § | **(Jointly Administered)** |
| | § | |
| | § | **(Formerly Jointly Administered** |
| **DEBTORS.** | § | **under Lead Case: Remarkable** |
| | § | **Healthcare of Carrollton, LP, et al.,** |
| | § | **24-40605)** |

**NOTICE OF FOURTH AMENDED JOINT SUBCHAPTER V PLAN OF**
**REORGANIZATION FOR REMARKABLE HEALTHCARE OF SEGUIN LP AND**
**REMARKABLE HEALTHCARE, LLC**

 **PLEASE TAKE NOTICE** that on January 6, 2025, the above-captioned debtors and debtors-in-possession (the "**Debtors**") filed the *Third Amended Joint Subchapter V Plan Of Reorganization for Remarkable Healthcare of Seguin LP and Remarkable Healthcare, LLC* [Dkt. No. 172] (the "**Third Amended Plan**").

 **PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is the *Fourth Amended Joint Subchapter V Plan Of Reorganization for Remarkable Healthcare of Seguin LP and Remarkable Healthcare, LLC* (the "**Fourth Amended Plan**").

 **PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit B** is a redline comparing the Fourth Amended Plan to the Third Amended Plan.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

January 9, 2025
Dallas, Texas

**GUTNICKI LLP**

*/s/ Liz Boydston*
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
8080 N. Central Expy., Suite 1700
Dallas, Texas 75206
Telephone: (469) 935-6699
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

-and-

Max Schlan (admitted *Pro Hac Vice*)
45 Rockefeller Plaza,
Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com

*Counsel to the Debtors and Debtors in
Possession*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was served on January 9, 2025 on all
those who consent to service via the court's ECF noticing service.

*/s/ Liz Boydston*

## Exhibit A

**Fourth Amended Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CHAPTER 11** |
| | § | |
| **REMARKABLE HEALTHCARE OF** | § | **CASE NOS. 24-40612 & 24-40611** |
| **SEGUIN LP AND REMARKABLE** | § | |
| **HEALTHCARE LLC,**[1] | § | **(Jointly Administered)** |
| | § | |
| | § | **(Formerly Jointly Administered** |
| **DEBTORS.** | § | **under Lead Case: Remarkable** |
| | § | **Healthcare of Carrollton, LP, et al.,** |
| | § | **24-40605)** |

**FOURTH AMENDED JOINT SUBCHAPTER V PLAN OF**
**REORGANIZATION FOR REMARKABLE HEALTHCARE**
**OF SEGUIN LP AND REMARKABLE HEALTHCARE, LLC**

Liz Boydston (SBN 24053684)          Max Schlan (Admitted *Pro Hac Vice*)
Alexandria Rahn (SBN 24110246)       45 Rockefeller Plaza
8080 N. Central Expy., Suite 1700    Suite 2000
Dallas, Texas 75206                  New York, New York 10111
Telephone: (469) 935-6699            Telephone: (646) 825-2330
Facsimile: (469) 895-4413            Facsimile: (646) 825-2330
lboydston@gutnicki.com               mschlan@gutnicki.com
arahn@gutnicki.com


COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

Dated: January 9, 2025

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

# TABLE OF CONTENTS

I.      PLAN AND CONFIRMATION REQUIREMENTS ........................................... 4

A.      Brief History of the Business Operations of the Debtors ........................................4
B.      Relationship with Landlord ......................................................................................4
C.      Relationship with Alleon Capital Partners, LLC......................................................5
D.      The QIPP Partnership with West Wharton County Hospital District ........................7
E.      History of These Cases ............................................................................................8
F.      This Plan Meets the "Best Interest of Creditors" Test and Is "Fair and Equitable" .........8
G.      The Debtors Will Be Able to Make All Distributions Contemplated Under this Plan ....8

II.     DEFINITIONS AND CONSTRUCTION OF TERMS....................................... 8

A.      Definitions ..............................................................................................................8
B.      Interpretation, Application of Definitions, and Rules of Construction............................17

III.    UNCLASSIFIED CLAIMS .......................................................................... 17

A.      Treatment of Administrative Claims ......................................................................17
B.      Treatment of Professional Fee Claims ..................................................................18
C.      Priority Tax Claims ...............................................................................................18

IV.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS 18

A.      Classification and Treatment of Claims and Interests ...........................................19
        (1)   Class 1 – Secured Claims ............................................................................19
        (2)   Class 2 – Priority Unsecured Claims .........................................................19
        (3)   Class 3 – General Unsecured Claims.........................................................20
        (4)   Class 4 – Interests in the Debtors..............................................................20

V.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................ 21

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ....................21
B.      Cure of Defaults....................................................................................................22
C.      Rejection Claims....................................................................................................22
D.      Reservation of Rights.............................................................................................22

VI.     DISTRIBUTIONS........................................................................................ 23

A.      Reorganized Debtors to Make Distributions ..........................................................23
B.      Method of Payment ...............................................................................................23
C.      Objections to and Resolution of Claims .................................................................23
D.      Claims Objection Deadline ....................................................................................23
E.      Disputed Claims ....................................................................................................23
F.      Delivery of Distributions ........................................................................................24
G.      Undeliverable or Unclaimed Distributions .............................................................24
H.      Setoff and Recoupment ........................................................................................24
I.      No Interest .............................................................................................................24

VII.    MEANS OF IMPLEMENTATION ............................................................... 25

A.      General Settlement of Claims ................................................................................25
B.      Exit Financing .......................................................................................................25
C.      Plan Funding .........................................................................................................25
D.      Continued Corporate Operations ...........................................................................25
E.      Continued Corporate Existence .............................................................................26
F.      Vesting of Assets ..................................................................................................26
G.      Corporate Governance...........................................................................................26
H.      Claims Objections .................................................................................................27
I.      Section 1145 Exemption .......................................................................................27

**VIII.    EFFECT OF PLAN CONFIRMATION** ....................................................... **27**

A.    Binding Effect ................................................................................27
B.    Plan Injunction ..............................................................................27
C.    Protected Party Injunction ............................................................28
D.    Exculpation ....................................................................................28
E.    Releases by the Debtors .................................................................29
F.    Release and Exculpation Injunction .............................................30
G.    Discharge of Claims ......................................................................30
    (1)    *Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)* ......................30
    (2)    *Cramdown Plan - Discharge Under Bankruptcy Code section 1192* ............................31
H.    Retention, Reservation, and Prosecution of Causes of Action ......31
I.    Release of Liens .............................................................................32
J.    Liabilities to, and Rights of, Governmental Entities ....................32

**IX.    CONDITIONS PRECEDENT TO EFFECTIVE DATE** ................................. **33**

A.    Conditions Precedent to Effective Date ........................................33
B.    Waiver of Conditions Precedent ...................................................34
C.    Effect of Nonoccurrence of Conditions ........................................34

**X.      RETENTION OF JURISDICTION** .................................................... **34**

**XI.    MISCELLANEOUS PROVISIONS** ...................................................... **36**

A.    Amendment or Modification of this Plan ......................................36
B.    Plan Supplement ...........................................................................36
C.    Additional Documents ...................................................................36
D.    Governing Law ..............................................................................37
E.    Time ................................................................................................37
F.    Severability ....................................................................................37
G.    Revocation .....................................................................................37
H.    Reservation of Rights .....................................................................37
I.    Successors and Assigns ..................................................................38
J.    Service of Documents .....................................................................38
K.    Entire Agreement ..........................................................................39
L.    Inconsistency ..................................................................................39
M.    Default ............................................................................................39
N.    Post-Confirmation Distribution Reports .......................................39

**EXHIBIT A** ......................................................................................... **40**

**EXHIBIT B** .......................................................................................... **41**

## I.   PLAN AND CONFIRMATION REQUIREMENTS

To confirm a plan under Bankruptcy Code section 1191, whether this Plan is consensual or not, certain requirements must be satisfied under Bankruptcy Code section 1129(a), including, without limitation, the "Best Interest of Creditors" test set forth under Bankruptcy Code section 1129(a)(7). *See* 11 U.S.C. § 1191. Thus, this Plan must provide Holders of Allowed Claims with more than they would receive if the Debtors' filed for relief under Chapter 7 of the Bankruptcy Code. Additionally, this Plan must be "fair and equitable" (as defined by section 1191(c)), and the Bankruptcy Court must find that the Debtors will be, or are reasonably likely to be, able to make the Distributions as contemplated by this Plan. Additionally, this Plan must include: (a) a brief history of the Debtors' business operations; (b) the Debtors' liquidation analysis; and (c) projections with respect to the Debtors' ability to make the Distributions provided for under this Plan. *See* 11 U.S.C. § 1190(1).

The Debtors submit that this Plan: (a) provides the necessary content required by Bankruptcy Code section 1190; and, as set forth more fully below, (b) is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, Holders of Allowed Claims will receive more than they would in a hypothetical chapter 7 liquidation; (ii) is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) is feasible as the Debtors will be able to make the Distributions contemplated under this Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

### A.   BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS

The Remarkable Healthcare Debtors, including Remarkable Healthcare of Seguin LP ("<u>RH Seguin</u>") and Remarkable Healthcare, LLC ("<u>RH LLC</u>") (collectively "<u>Remarkable</u>") were formed in Texas from 2010 to 2013 to manage and operate skilled nursing facilities in Texas. RH Seguin's facility services approximately 270 resident patients. As of March 20, 2024 (the "<u>Petition Date</u>"), the Debtors employed approximately 490 employees who work in the field and provide general business functions, both on a full and part-time basis, in various capacities to keep the Debtors' business operating successfully and efficiently. Remarkable is focused on the individual who needs healthcare services after their hospital stay and offers both services to help individuals return home as well as long-term services for those who require extended care. Stabilizing the patient from a clinical, nursing, and social aspect is Remarkable's top priority.

### B.   RELATIONSHIP WITH LANDLORD

On July 8, 2010, a certain Lease Agreement and Security Agreement by and between Guadalupe NH Development, Ltd (the "<u>Former Landlord</u>") and LBJM, L.L.C. was entered to lease the property with the common street address 1339 Eastwood Drive, Seguin, Guadalupe County, Texas 78155 (the "<u>Original Seguin Lease</u>"). The Original Seguin Lease was then assigned via an Assignment of Lease Agreement and Security Agreement, dated July 8, 2010, by and between LBJM, LLC (as the Assignor) and RH Seguin (as the Assignee).

On or about February 12, 2018, Debtors along with related debtors Remarkable Healthcare of Fort Worth, LP ("<u>RH Fort Worth</u>"), Remarkable Healthcare of Dallas, LP ("<u>RH Dallas</u>"), and

4

Remarkable Healthcare of Carrollton, LP ("RH Carrollton") (together, the "Related Debtors")[2] filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), jointly administered under case number 18-40295 (the "2018 Bankruptcy Cases"). In the 2018 Bankruptcy Cases, the Court confirmed the Debtors' plan on May 16, 2019, and the cases were closed on April 4, 2020.

In the 2018 Bankruptcy Cases, the confirmed plan included an agreement in the form of a Promissory Note (the "Cure Note") executed May 10, 2019 to cure the Original Seguin Lease as well as leases held by the Related Debtors. On November 21, 2022, the Former Landlord assigned the Original Seguin Lease to KRS Seguin (the "KRS Landlord"). Notwithstanding the assignment, the Former Landlord retained the Cure Note. Counsel for the KRS Landlord in these Cases is also counsel for the Former Landlord and has filed proof of claim No. 14 in these Cases for $995,867.80 on behalf of the Former Landlord against the Debtors and the Related Debtors.

## C. RELATIONSHIP WITH ALLEON CAPITAL PARTNERS, LLC

On or about June 7, 2019, Debtors and Related Debtors entered into a Loan and Security Agreement (the "Loan Agreement") with Alleon Capital Partners, LLC ("Alleon" or the "Secured Lender"), which provided that Alleon would extend credit to Debtors to finance Debtors' business operations. Also, on or about June 7, 2019, RH-LLC, Remarkable Investments, LP, LBJM, LLC, Remarkable Duo, LLC, Remarkable Partners of Fort Worth, LP, Remarkable Partners, LP, Remarkable Partners of Dallas, LP, and Remarkable Rehabilitation, LP, along with Laurie Beth McPike and Jon McPike (collectively, the "Guarantors"), executed certain Guaranty and Security Agreement ("Guarantees," and together with the Loan Agreement and all documents executed in connection therewith, the "Security Documents"), pursuant to which Guarantors guaranteed payment and performance of all present and future obligations of the Debtors to Alleon. Additionally, the Debtors and the Related Debtors granted Alleon a security interest in all of the Debtors' and the Related Debtors' present and future accounts, chattel paper, goods (including inventory and equipment), instruments, investment property, documents, and general intangibles, letter of credit rights, commercial tort claims, deposit accounts, the billing reserve cash collateral, and the proceeds thereof (the "Cash Collateral" or "Collateral").

In the 2018 Bankruptcy Cases, Alleon provided new financing to Debtors and the Related Debtors for their plan of reorganization. The liens and UCC-1 Financing Statements of Comerica Bank were assigned to Alleon as security for the new financing. Under the terms of the Security Documents, Alleon would make advances to Debtors so long as, before and after such advance, the unpaid balance of all cash obligations under the Loan Agreement (the "Loan Balance") did not exceed the allowable amount as defined in the Loan Agreement (the "Borrowing Base"). Debtors were required to pay Alleon, on demand, if the Loan Balance exceeded the allowable amount (an "Over Advance Amount").

Pursuant to the Loan Agreements, Debtors, Regions Bank, and Alleon also entered into certain Deposit Account Control Agreements ("DACAs"). Pursuant to the DACAs, the Debtors

---

[2] The Related Debtors filed for chapter 11 along with the Debtors on the Petition Date. On October 10, 2024, the Related Debtors' cases converted to chapter 7.

authorized, and Regions Bank was required to complete, a daily sweep of all funds in the Debtors' deposit accounts to be paid to Alleon.

In December of 2022, Alleon changed the way they calculate the Borrowing Base. Rather than the formula in the original Loan Agreement which based the Borrowing Base on accounts receivables, the new formula now involved a three-month average of collections over a thirty-day period. In January of 2023, the Debtors signed an amendment to the Loan Agreement, which was a renewal of the original term of the Loan Agreement (the "Second Amendment"). The Second Amendment also altered the "Maximum Amount" for the Borrowing Base, reducing it from $5,000,000 to $3,000,000. These two changes ultimately reduced the Debtors' Borrowing Base from over $4.2 million to $1.9 million.  And, on top of that, the Debtors already had more than $1.9 million drawn down on the line at the time of this change, but Alleon made a concession that it would not default on the Debtors.

Shortly thereafter, the Second Amendment was changed to a Third Amendment dated February 7, 2023 (the "Third Amendment"). The Third Amendment imposed an increased interest to default rate, even though the Debtors' cash flow had temporarily decreased due to industry-specific reasons and despite Alleon having agreed not to default the Debtors. As a result, Alleon created a pull-on cash from the Debtors, cash that the Debtors needed to keep operations cash flowing.

During the second quarter of 2023, the Debtors needed to draw down additional funds on their line of credit because census levels and revenues had not yet returned to pre-COVID levels. But the Debtors could not because any excess line of credit no longer existed. Alleon, however, agreed to extend up to a limit but imposed egregious penalties in exchange, and the Debtors had no other options but to accept those penalties. Alleon refused to return collected cash to the Debtors for operation. By withholding cash collections, Alleon was able to force the Debtors to sign the amended agreements that provided for higher fees and higher interest due to Alleon's forced default.

On or about May 23, 2023, Alleon, the Debtors, and the Related Debtors entered into a Forbearance Agreement and Fourth Amendment to the Loan Agreement (the "Forbearance Agreement"). The Forbearance Agreement imposed weekly fees in excess of $35,000.00 even though Alleon knew that the Debtors were not in a position to pay such high fees. Nevertheless, the Debtors managed to sustain their operations for a few months because of the ERC tax credits received from the federal government, which were used to fund payroll and patient care needs.

To add to the Debtors' expenses, the census had increased by 23% since the end of 2022, but the Debtors would not see this increase in revenue from the increased census for a few months because the Medicare Advantage Plans and State Medicaid payments were increasingly delayed due to no government oversight and new federal Medicaid laws related to annual patient eligibility renewals. At the same time, the increase in the census led immediately to the Debtors having additional expenses due to take of the newly admitted patients.

Ultimately, the Debtors and Related Debtors were forced to file for subchapter V of chapter 11 in November of 2023. The Debtors, however, based on advice from prior counsel and misleading characterizations by Alleon and the KRS Landlord that they would work with the

Debtors if they dismissed their cases, voluntarily agreed to dismiss the case in February of 2023. Shortly, thereafter, it became clear that Alleon would not follow through on its word to accept $10,000 per week from the Debtors and, on top of that, beginning on or about 8:00 a.m. March 1, 2024, Alleon swept every single dollar the Debtors and the Related Debtors received each day and refused to fund, advance, or return the Debtors' money. Between March 1, 2024 and March 20, 2024, Alleon cumulatively swept $951,860.43 of which approximately $302,885.72 is attributable to the Debtors.

**D.  THE QIPP PARTNERSHIP WITH WEST WHARTON COUNTY HOSPITAL DISTRICT**

In late 2023, while in bankruptcy, Debtor RH Seguin started working toward entering into the Quality Incentive Payment Program for Nursing Homes ("QIPP") through an arrangement with West Wharton County Hospital District ("WWCHD"). The QIPP would allow RH Seguin to net additional revenues starting in the fourth quarter of 2024. With the KRS Landlord's consent, on March 1, 2024, the RH Seguin executed a management agreement with WWCHD. In addition to a management agreement, WWCHD and RH Seguin entered into a sublease Dated as of March 1, 2024, and an Operations Transfer Agreement between Debtor Remarkable Healthcare, LLC and WWCHD. The KRS Landlord consented to the sublease.

Entering the QIPP program required Debtor RH Seguin to execute change of ownership ("CHOW") documents to transfer its Medicare Identification Number and provider agreements to WWCHD. The CHOW process put a hold on not only RH Seguin's ability to bill Medicaid (which accounts for the majority of their patients) for the entire time from March 1, 2024 until the CHOW is complete, (the "CHOW Hold"), but the CHOW Hold has also held up certain Medicare payments as well. Once the CHOW Hold was released, the Debtors believed they would begin to see a substantial influx of collections on their pre- and post-petition accounts receivables. Nevertheless, even with the CHOW being finalized, the Debtors encountered some billing issues related to CMS and the new provider number further holding up the expected influx of accounts receivables. With the post-petition billings able to resume and the return of full collections, the Debtors should not have a problem paying rent and other expenses as well as their creditors through this Plan.

A dispute also arose between the Debtors and WWCHD regarding interim working capital advances made under the management agreement and the withholding of Medicaid funds necessary to satisfy the operating expenses of the Debtors. The parties came to a resolution as set forth in the *Amended Agreed Order Granting Debtors' Motion to Compel West Wharton County Hospital District to Turnover Funds* [Case No. 24-40605; Dkt. No. 433] (the "WWCHD Settlement Order"). In sum, the WWCHD Settlement Order and corresponding Settlement Term Sheet provide for WWCHD releasing all Medicaid funds to the Debtors in exchange for a secured claim of $420,000 (the "WWCHD Claim"). The Debtors will satisfy the WWCHD Claim with funds from exit financing or the QIPP Supplemental Payment.

### E.  History of These Cases

On March 20, 2024 (the "Petition Date"), the Debtors and the Related Debtors commenced these Cases by filing voluntary petitions for relief under subchapter V of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. On March 26, 2024, Mark Weisbart was appointed Subchapter V Trustee in these Cases. No other trustee or committee has been appointed. On April 26, 2024, the Related Debtor RH Fort Worth ceased operations. On May 13, 2024, the operations for Related Debtors, RH Carrollton and RH Dallas, were transitioned to new management pursuant to the terms of the Amended Show Cause Order entered on May 10, 2024, and as amended on May 14, 2024. On October 10, 2024, the Court entered the *Order Granting DFW Debtors' Emergency Motion to Convert Chapter 11 Cases to Chapter 7* [Case No. 24-40605; Dkt. No. 423] converting the Related Debtors cases to chapter 7.

Debtors RH Seguin and Debtor RH LLC continue to manage and operate their businesses and property as debtors in possession pursuant to Bankruptcy Code sections 1107, 1108, and 1184.

### F.  This Plan Meets the "Best Interest of Creditors" Test and Is "Fair and Equitable"

In accordance with Bankruptcy Code section 1191(c), this Plan provides that all Distributions will be funded with funds from exit financing and the Debtors' projected Disposable Income over the Commitment Period.  The  Debtors' exit financing commitment is anticipated at $3 million with total projected Disposable Income for the Commitment Period estimated at just over $2.6 million. Attached hereto as Exhibit A is the Debtors' projected Disposable Income analysis. Additionally, the Debtor's Liquidation Analysis, attached hereto as Exhibit B demonstrates that this Plan is in the best interests of creditors.

Accordingly, this Plan complies with the "best interest of creditors" test and is "fair and equitable" because it proposes to provide total Distributions to Holders of Allowed Claims that exceed the Liquidation Value and are not less than the Debtors' projected Disposable Income for the Commitment Period.

### G.  The Debtors Will Be Able to Make All Distributions Contemplated Under this Plan

In accordance with Bankruptcy Code sections 1191(c)(3)(A)(i) and (ii), this Plan demonstrates that the Debtors have sufficient Cash and will have sufficient future earnings to provide regular, annual Pro Rata Share Distributions to Holders of Allowed General Unsecured Claims over the Commitment Period.

## II.  DEFINITIONS AND CONSTRUCTION OF TERMS

### A.  Definitions

"*Remarkable*" or "*Remarkable Healthcare*" means Remarkable Healthcare of Seguin, LP and Remarkable Healthcare, LLC.

"*941 Taxes*" means those taxes set forth on IRS Form 941, including income taxes, Social Security tax, and Medicare tax withheld from employee paychecks as well as the employer portion of Social Security tax and Medicare tax.

"*Administrative Claim*" means any Claim against any Debtor for costs and expenses of administration of the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) and all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5).

"*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, with the exception of Professional Fee Claims, which shall be the first Business Day that is 30 days after the Effective Date.

"*Affiliate*" means an "affiliate," as defined in Bankruptcy Code section 101(2).

"*Allowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim Filed by the applicable Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or a Claim or Interest for which a Proof of Claim or request for payment of Administrative Claim expressly is not or shall not be required to be Filed under this Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not Contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest that is Allowed pursuant to this Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by this Plan (including the Claims Objection Deadline), the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. Unless otherwise specified in this Plan or in an order of the Bankruptcy Court allowing such Claim or Interest, "Allowed" in reference to a Claim or Interest shall not include: (1) any interest on the amount of such Claim accruing from and after the Petition Date; (2) any punitive or exemplary damages; (3) any fine, penalty or forfeiture; or (4) any attorneys' fees and expenses. Any Claim or Interest that has been or is hereafter listed in the Schedules as Contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Bankruptcy Code section 502(d) shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest.

"*Avoidance Actions*" means causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Texas, having jurisdiction over the Subchapter V Cases or, if the Bankruptcy Court ceases to exercise jurisdiction over the Subchapter V Cases, such court or adjunct thereof that exercises jurisdiction over the Subchapter V Cases in lieu of the United States Bankruptcy Court for the Eastern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"*Bar Date(s)*" means the Claims Bar Date, the Governmental Bar Date, or the Rejection Damages Bar Date, as applicable; and "Bar Dates" means a collective reference to the Claims Bar Date, the Governmental Bar Date, and the Rejection Damages Bar Date.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case now owned or hereafter acquired by the Debtors and/or their Estates, and in each case, whether known or unknown, Contingent or non-Contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Subchapter V Cases, including through the Effective Date.

"*Claim*" means a "claim," as that term is defined in Bankruptcy Code section 101(5), against any Debtor.

"*Claims Bar Date*" means the date for filing Proofs of Claim, May 29, 2024.

"*Claims Objection Deadline*" means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, and (b) such other date as may be specifically fixed by order of the Bankruptcy Court.

"*Claims Register*" means the official register of Claims.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code section 1122(a).

"*Collateral*" means any property or interest in property of the Estates subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

"*Commitment Period*" means the five-year period contemplated and set forth under Bankruptcy Code section 1191(c).

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under Bankruptcy Code section 1128 at which the Debtors seek entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

"*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

"*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Consummation*" means the occurrence of the Effective Date.

"*Contingent*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, any contingent or unliquidated Claim asserted or which may be asserted against the Debtors.

"*Cure Notice*" means a notice sent to counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under this Plan pursuant to Bankruptcy Code section 365, which shall include: (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) the proposed amount to be paid on account of Cure Claims, and (c) procedures for resolution by the Bankruptcy Court of any related disputes; provided that the Schedule of Assumed Executory Contracts and Unexpired Leases and any amended Schedule of Assumed Executory Contracts and Unexpired Leases may each constitute a "Cure Notice" hereunder.

"*Cure*" or "*Cure Claim*" means any Claim (unless waived or modified by the applicable counterparty) against a Debtor based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Bankruptcy Code section 365, other than a default that is not required to be cured pursuant to Bankruptcy Code section 365(b)(2).

"*Debtor Release*" has the meaning ascribed to such term in Article VIII.E.

"*Debtor Releasing Parties*" has the meaning ascribed to such term in Article VIII.E.

"*Debtors*" means, collectively, Remarkable Healthcare of Seguin, LP and Remarkable Healthcare, LLC.

"*Disallowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, a Claim or Interest, or any portion thereof. that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as Contingent, Disputed or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disposable Income*" means Debtors' "disposable income" as defined under Bankruptcy Code section 1191(d).

"*Disputed*" means, with respect to any Claim or Interest, or any portion thereof, a Claim or Interest, or any portion thereof, that is not yet Allowed, including (a) any Claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection Filed by the Claims Objection Deadline or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court; (c) any Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, (d) any Claim or Interest evidenced by a Proof of Claim which amends a Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, and (e) any Claim or Interest that is not an Allowed Claim or Allowed Interest or a Disallowed Claim or a Disallowed Interest.

"*Distribution*" means Cash, property, interests in property, or other value distributed by the Reorganized Debtors to Holders of Allowed Claims, or their designated agents, under this Plan.

"*Effective Date*" means the date which is the first Business Day on which the conditions set forth in Article IX.B have been satisfied or waived.

"*Entity*" shall have the meaning set forth in Bankruptcy Code section 101(15).

"*Estate*" means the estate of any Debtor created under Bankruptcy Code sections 301 and 541 upon commencement of the applicable Debtor's Subchapter V Cases.

"*Exculpated Parties*" means collectively, and in each case in their capacity as such during the Subchapter V Cases the Debtors and Reorganized Debtors and each of their directors, officers, attorneys, investment bankers, accounts, consultants, and other Professionals.

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Exit Credit Agreement*" means that certain Term Loan Agreement entered into on January 2, 2025, by and among, the Reorganized Debtors and the Exit Lender in connection with the borrowing of the New Loan and substantially in the form contained in the Plan Supplement.

"*Exit Lender*" means the lender from time-to-time party to the Exit Credit Agreement.

"*Facilities Leases*" means the Unexpired Leases and all related documents with respect to the Facilities, including but not limited to, as applicable, master leases, subleases, and guarantees.

"*Facilities*" means the Facilities owned by the Landlord and previously or currently operated by the Debtors.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Subchapter V Cases.

"*Final Decree*" means the order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Subchapter V Cases.

"*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the docket in the Subchapter V Cases (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

"*General Unsecured Claim*" means any Unsecured Claim.

"*Governmental Bar Date*" means the date for Governmental Units to file Proofs of Claim, September 16, 2024.

"*Governmental Unit*" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"*Gutnicki*" means Gutnicki LLP.

"*Holder*" means the beneficial holder of any Claim or Interest.

"*Impaired*" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

"*Interest*" means any "equity security" in a Debtor, as defined in Bankruptcy Code section 101(16), including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

13

"*KRS*" or "*Landlord*" means KRS Seguin, LLC, Kilgore Property Management, LLC, and applicable affiliates.

"*Lien*" means "lien," as defined in Bankruptcy Code section 101(37).

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Texas, or any other court having jurisdiction over the Subchapter V Cases.

"*New Loan*" means that certain senior secured loan to be borrowed on the Effective Date by the Reorganized Debtor pursuant to the Exit Credit Agreement in an aggregate principal amount of $3 million.

"*Petition Date*" means March 20, 2024, the date on which the Debtors commenced the Subchapter V Cases as applicable to each particular Debtor.

"*Plan*" means this *Third Amended Subchapter V Plan of Reorganization for Remarkable Healthcare of Seguin, LLP and Remarkable Healthcare, LLC*, dated as of January 6, 2025, including all exhibits, supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Documents*" means this Plan, this Plan Supplement, and all the exhibits and schedules attached to each of the foregoing.

"*Plan Proponents*" means the Debtors.

"*Plan Supplement*" means the supplemental documents, schedules, and exhibits to this Plan to be Filed by the Debtors containing substantially final forms of, among other things, the Exit Credit Agreement, the Schedule of Rejected Executory Contracts and Unexpired Leases. The Debtors shall have the right to amend all of the documents contained in, and exhibits to, this Plan Supplement through the Effective Date.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

"*Priority Unsecured Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, which is entitled to priority under Bankruptcy Code section 507(a).

"*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under this Plan.

"*Professional Fee Claim*" means any Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

"*Professional Fee Claims Bar Date*" means the first business day which is 45 days after the Effective Date.

"*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered before or on the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331.

"*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Subchapter V Cases.

"*Protected Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors and the Reorganized Debtors; (b) the Debtors' Professionals: Gutnicki, LLP and Omni; and (c) the individual members of the Debtors' management.

"*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

"*Rejected Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to this Plan, filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date.

"*Rejection Claims*" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) by any of the Debtors, as limited, in the case of a rejected Unexpired Lease, by Bankruptcy Code section 502(b)(6).

"*Rejection Damages Bar Date*" means the date by which Rejection Claims must be filed, 30 days after the later of (i) the Confirmation Date, or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease.

"*Related Parties*" means, with respect to any Person, such Person's current and former Affiliates, partners, subsidiaries, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, together with their respective successors and assigns, in each case in their capacity as such.

"*Released Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors and the Reorganized Debtors; (b) the Debtors' Professionals: Gutnicki, LLP and Omni; (c) the individual members of the Debtors' management; and (d) the Exit Lender.

"*Releasing Parties*" shall mean the Debtor Releasing Parties.

"*Reorganized Debtors*" means the Debtors and any successor thereto after the Effective Date.

"*Remarkable*" means Remarkable Healthcare of Seguin, LP and Remarkable Healthcare, LLC.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs Filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such Schedules may be amended, modified, or supplemented from time to time.

"*Secured Claim*" means any Claim against any Debtor: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to this Plan.

"*Seguin Lease*" means the Lease Agreement and Security Agreement By and Between Guadalupe NH Development, Ltd. And LBJM, L.LC. Dated July 8, 2010 for the premises with the common street address of 1339 Eastwood Drive, Seguin, Guadalupe County, Texas 78155. This lease was assigned on November 21, 2022 from the former landlord, Guadalupe NH Development, Ltd. to the current Landlord KRS Seguin.

"*Subchapter V Case(s)*" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court being formerly jointly administered under Case No. 24-40605, and jointly administered since October 10, 2024 under Case No. 24-40611.

"*Subchapter V Trustee*" means Mark Weisbart.

"*U.S. Trustee*" means the Office of the United States Trustee for the Eastern District of Texas.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Unimpaired"* means, with respect to a Class of Claims or Interests, a Claim or an Interest that is "unimpaired" within the meaning of Bankruptcy Code section 1124.

"*Unsecured Claim*" means any Claim other than Administrative Claims, Secured Claims, and Priority Unsecured Claims.

"*West Wharton*" or "*WWCHD*" means West Wharton County Hospital District.

## B. INTERPRETATION, APPLICATION OF DEFINITIONS, AND RULES OF CONSTRUCTION

The following rules of construction, interpretation, and application shall apply:

(1)     Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

(2)     Unless otherwise specified, each section, article, schedule, or exhibit reference in this Plan is to the respective section in, article of, schedule to, or exhibit to this Plan.

(3)     The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

(4)     The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of this Plan.

(5)     A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

(6)     The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.

(7)     Unless otherwise provided, any reference in this Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

(8)     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## III.   UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes and Interests set forth in Article IV of this Plan.

### A.  TREATMENT OF ADMINISTRATIVE CLAIMS

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Administrative Claim, regular payments in Cash, throughout the Commitment Period, totaling not less than the full unpaid amount of such Allowed Administrative Claim, *provided*, however, that all 941 Taxes arising on or after the Petition Date shall be paid in full upon the Effective Date.

All requests for payment of Administrative Claims must be Filed and served on the Debtors or Reorganized Debtors, as applicable, pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Objections to such requests, if any, must be Filed and served on the Debtors or Reorganized Debtors, as applicable, and the requesting party no later than 15 days after the earlier of (i) the Administrative Claims Bar Date or (ii) the date such request for payment of an Administrative Claim is filed. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

### B.  TREATMENT OF PROFESSIONAL FEE CLAIMS

All requests for payment of Professional Fee Claims must be Filed no later than the Professional Fee Claims Bar Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules. Unless otherwise agreed to, once approved by the Bankruptcy Court, Allowed Professional Fee Claims shall be paid with an amount of Cash equal to the full unpaid amount of the Allowed Professional Fee Claim (1) on or promptly thereafter the Effective Date or (2) the first Business Day after the date that is 30 calendar days after the date on which a Professional Fee Claim becomes an Allowed Professional Fee Claim.

### C.  PRIORITY TAX CLAIMS

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment with the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim an amount of Cash equal to the full unpaid amount of such Allowed Tax Claim in regular installments over a period not greater than the Commitment Period in a manner not less favorable  than the most favored General Unsecured Claim provided for by the Plan.

## IV.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Pursuant to Bankruptcy Code sections 1122, 1123, and 1190, Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to this Plan, as set forth herein. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan is premised upon the substantive consolidation of the Debtors solely for the purposes of voting, determining which Classes have accepted this Plan, confirming this Plan, and the resultant treatment of Claims and Interests and Distributions under this Plan.

This Plan contemplates the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Estimated Recovery |
|-------|-------------------|--------|---------------|---------------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | Impaired | Allowed to Vote | 20% |
| 4 | Equity Interests | Unimpaired | Deemed to Accept | 100% |

## A. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Except to the extent that the Debtors or the Reorganized Debtors, as applicable, and a Holder of an Allowed Claim or Allowed Interest, as applicable, agree in writing to less favorable treatment for such Allowed Claim or Allowed Interest, as applicable, such Holder shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon thereafter as reasonably practicable.

### (1)    Class 1 – Secured Claims

*Classification*. Class 1 consists of all Secured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Secured Claim and the Debtors or the Reorganized Debtors, as applicable agree in writing to less favorable treatment of its Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Secured Claim: (i) payment in full, in Cash, of the unpaid portion of its Allowed Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes Allowed; (ii) delivery of the Collateral securing such Allowed Secured Claim; (iii) Reinstatement of the Secured Claim; or (iv) such other treatment as the Debtors or Reorganized Debtors, as applicable and the Holder of such Allowed Secured Claim may agree.

*Voting*. Class 1 is Unimpaired. Holders of Allowed Secured Claims in Class 1 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Secured Claims are not entitled to vote to accept or reject this Plan.

### (2)    Class 2 – Priority Unsecured Claims

*Classification*. Class 2 consists of all Priority Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Priority Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable agree in writing to less favorable treatment of its Allowed Priority Unsecured Claim, each Holder of an Allowed Priority Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Priority Unsecured Claim: (i) payment in full, in Cash, on the later of the Effective Date and the date on which such Priority Unsecured Claim becomes Allowed; (ii) payment in the ordinary course of business between the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim; or (iii) such other treatment

as the Debtors or Reorganized Debtors, as applicable and the Holder of such Allowed Priority Unsecured may agree.

*Voting*. Class 2 is Unimpaired. Holders of Allowed Priority Unsecured Claims in Class 2 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Priority Unsecured Claims are not entitled to vote to accept or reject this Plan.

### (3)    Class 3 – General Unsecured Claims

*Classification*. Class 3 consists of all General Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment of its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed General Unsecured Claim, its Pro Rata share of Debtors' projected Disposable Income (as set forth under Exhibit A to this Plan). In accordance therewith, Debtors will make Distributions on account of Allowed General Unsecured Claims as follows:

- On an annual basis beginning in the fourth year after this Plan goes effective, after satisfaction in full of all Allowed Secured Claims, Administrative Expense Claims, Professional Fee Claims, and Priority Unsecured Claims, the Debtors shall make Distributions of all available disposable income to all Holders of Allowed Unsecured Claims on a Pro Rata basis.

*Voting*. Class 3 is Impaired. Holders of Priority Unsecured Claims are entitled to vote to accept or reject this Plan.

### (4)    Class 4 – Interests in the Debtors

*Classification*. Class 4 consists of all Interests in the Debtors.

*Treatment*. Holders of Interests in Debtors shall retain such Interests. Holders of Interests in the Debtors shall not receive any Distribution under this Plan on account of such Interests.

*Voting*. Class 4 is Unimpaired Holders of Allowed Interests in Class 4 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Interests are not entitled to vote to accept or reject this Plan.

## V.  **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

### A.  ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Schedule of Rejected Executory Contracts and Unexpired Leases will be deemed assumed by the applicable Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to Bankruptcy Code sections 365 and 1123. The Debtors reserve the right to reject any executory contrary or Unexpired Lease until the Confirmation Date.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtors in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of the Subchapter V Cases or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to this Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by this Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases will be deemed to have been rejected. The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the assumptions as of the Effective Date. All rejections of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date, unless such Executory Contract or Unexpired Lease (i) previously has been assumed or rejected by the appliable Debtor; (ii) expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume or reject pending before the Court as of the Confirmation Date; (iv) is identified in this Plan Supplement as an Executory Contract or Unexpired Lease to be assumed; (v) is an insurance policy; or (vi) is otherwise indicated in this Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan.

### B. CURE OF DEFAULTS

Any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash by the Debtors on the Effective Date or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure payments, (b) any other matter pertaining to assumption, the Cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the Executory Contract or Unexpired Lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. The Debtors reserve the right to reject any Executory Contract or Unexpired Lease not later than 30 days after the entry of a Final Order resolving any such dispute.

No later than seven days after Confirmation of the Plan, the Debtors will provide for notices of proposed assumption and proposed Cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any counterparty's objection to the proposed assumption of an Executory Contract or Unexpired Lease; related Cure amount; or adequate assurance must be Filed, served, and actually received by the Debtors within 14 days of service. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have consented to such assumption or proposed Cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

### C. REJECTION CLAIMS

Any counterparty to a contract or lease which is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases or is otherwise rejected by the Debtors must File and serve a Proof of Claim on the applicable Debtor that is party to the contract or lease to be rejected no later than the Rejection Damages Bar Date.

### D. RESERVATION OF RIGHTS

Neither the exclusion nor inclusion of any contract or lease in this Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract

or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

## VI.   DISTRIBUTIONS

### A.   REORGANIZED DEBTORS TO MAKE DISTRIBUTIONS

Unless ordered otherwise in the Confirmation Order, the Reorganized Debtors shall make all Distributions required by this Plan.

### B.   METHOD OF PAYMENT

Unless otherwise expressly agreed in writing, payments of Cash under this Plan shall be made by a check drawn on a domestic bank, ACH transfer, or an electronic wire. Whenever any payment, distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

### C.   OBJECTIONS TO AND RESOLUTION OF CLAIMS

The Reorganized Debtors shall have the right to File objections to Claims after the Effective Date. All objections shall be litigated to entry of a Final Order; *provided, however*, that only the Reorganized Debtors have the authority to compromise, settle, otherwise resolve, or withdraw any objections without approval of the Bankruptcy Court.

### D.   CLAIMS OBJECTION DEADLINE

The Debtors or the Reorganized Debtors, as applicable, shall have the right to object to all Claims. The Claims Objection Deadline shall be 60 days after the Effective Date; *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Reorganized Debtors.

### E.   DISPUTED CLAIMS

Notwithstanding any other provision of this Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan.

On any date that Distributions are to be made under the terms of this Plan, the Reorganized Debtors shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. The Reorganized Debtors shall also segregate any interest, dividends, or proceeds of such Cash. Such Cash, together with any interest, dividends, or proceeds thereof, shall be held in trust for the

benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

Except as otherwise provided herein, within the later of (i) seven (7) Days after a Claim becomes an Allowed Claim and (ii) 30 Days after the expiration of the Claims Objection Deadline, the Debtors shall distribute all Cash or other property, including any interest, dividends, or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

### F.   DELIVERY OF DISTRIBUTIONS

Except as provided herein, Distributions to Holders of Allowed Claims shall be made:

(i) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtors or Reorganized Debtors, as applicable, after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim is Filed and the Debtors or Reorganized Debtors have not received a written notice of a change of address.

### G.   UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS

If the Distribution to the Holder of any Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder unless and until the Reorganized Debtors are notified in writing of such Holder's then current address, at which time such undelivered distribution shall be made to such Holder within 90 days of receipt of such Holder's then current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and revert to the Reorganized Debtors at the expiration of six months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in this Plan, nothing in this provision shall act as a bar to entry of a Final Decree Closing the Subchapter V Cases.

### H.   SETOFF AND RECOUPMENT

From and after the Effective Date, the Reorganized Debtors may, to the extent permitted by Bankruptcy Code section 553 or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Causes of Action of any nature whatsoever that the Reorganized Debtors may have against the Holder of such Claim; *provided, however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor any other Cause of Action.

### I.   NO INTEREST

Unless otherwise explicitly provided for in this Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## VII.   MEANS OF IMPLEMENTATION

### A.   GENERAL SETTLEMENT OF CLAIMS

Unless otherwise set forth in this Plan, pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, on the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved by this Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and within the range of reasonableness.

### B.   EXIT FINANCING

On the Effective Date, the Reorganized Debtor shall execute and deliver all other documents required to be issued or executed pursuant to the Subchapter V Plan, including, the Exit Credit Agreement, and such issuance, execution and delivery is hereby authorized without further act or action under applicable law, regulation, order or rule. The Reorganized Debtors shall execute and deliver such other agreements, documents and instruments as are required to be executed and/or delivered pursuant to the terms of (including, but not limited to, as a condition precedent to the effectiveness of) the Subchapter V Plan, the Exit Credit Agreement. The guarantees and Liens securing obligations under the Exit Credit Agreement and New Loan shall be as set forth in the Exit Credit Agreement. The guarantees, pledges, liens and other security interests granted and pursuant to or in connection with the Exit Credit Agreement are granted in good faith as an inducement to the holder of the New Loan to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance.

As of the Effective Date, the New Loan will be in an aggregate principal amount not to exceed $3 million. The New Loan will be borrowed pursuant to the Exit Credit Agreement. The proceeds from the New Loan will be used to (i) pay the cure of the Seguin Lease, (ii) pay Administrative Expense Claims and all other Claims necessary for the Subchapter V Plan to go effective, and (iii) fund the Reorganized Debtor's working capital and general corporate needs.

### C.   PLAN FUNDING

The Debtors anticipate that all Distributions made under this Plan will be funded from the Cash on hand, the New Loan, and future earnings, which will not be less than 100% of the Debtors' projected Disposable Income for the Commitment Period. However, the Debtors reserve the right to make a lump sum payment during the Commitment Period.

### D.   CONTINUED CORPORATE OPERATIONS

The Reorganized Debtors will continue to operate with the primary purpose of managing the operations of the skilled nursing and assisted living facility in Seguin, Texas.

### E.  CONTINUED CORPORATE EXISTENCE

Each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of Entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date.

### F.  VESTING OF ASSETS

Except as otherwise expressly provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated in this Plan or this Plan Supplement, pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), 1141(b) and (c), and any other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtors, including all claims, rights, and Causes of Action of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Subchapter V Cases or under or in connection with this Plan, shall automatically, without the notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule or any requirement of further action, vote or other approval or authorization of the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized Debtors or the other applicable Entity or by any other person (except for those expressly required pursuant hereto or by this Plan Documents), vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Liens, if any, which survive the occurrence of the Effective Date as described in this Plan. On and after the Effective Date, the Reorganized Debtors may operate their respective businesses and use, acquire, and dispose of their respective property, without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

### G.  CORPORATE GOVERNANCE

The Reorganized Debtors will continue to be governed by its manager. On the Effective Date, the Debtors' officers will remain officers of the Reorganized Debtors. Additionally, certain insiders of the Debtors shall remain employed by the Reorganized Debtors. Names and compensation are as follows:

| Insider | Position | Hourly Rate & Annualized Net Income |
|---------|----------|-------------------------------------|
| AYOUBI, DIANE S | Sr Vice President Of Operations | $72.11/hour<br>$12,698.43 Annualized Net Income |
| ENGLISH, KINSER L | HR Clerical Assistant | $20/hour<br>$10,270.61 Annualized Net Income |
| ENGLISH, ROBERT L | Director of Information Technology | $14.42/hour<br>$7,304.99 Annualized Net Income |
| MCPIKE, CHRISTOPHER | Executive Director | $66,120.74 Annualized Net Income |
| MCPIKE, JON E | Chief Operating Officer | $116,721.16 Annualized Net Income |
| MCPIKE, LAURIE BETH | President/CEO | $160,153.54 Annualized Net Income |
| ENGLISH, KIELSON | Administrative Assistant | $18/hour<br>$1,880.40 Annualized Net Income |
| ENGLISH, KAYDEN | Administrative Assistant/Courier | $10.50/hour<br>$350 Annualized Net Income |

### H. CLAIMS OBJECTIONS

The Debtors or the Reorganized Debtors, as applicable, shall have the right to object to all Claims. The Claims Objection Deadline shall be 60 days after the Effective Date; *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Reorganized Debtors.

### I. SECTION 1145 EXEMPTION

In accordance with Bankruptcy Code section 1145, the retention of Interests under this Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## VIII. EFFECT OF PLAN CONFIRMATION

### A. BINDING EFFECT

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

### B. PLAN INJUNCTION

**Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been satisfied or released pursuant to this Plan shall be permanently enjoined, from and after the Effective Date, from taking**

any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates:

> **(a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has Filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to this Plan or that is otherwise inconsistent with the provisions of this Plan.**

## C. PROTECTED PARTY INJUNCTION

The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on account of any Claim or Cause of Action against a Protected Party in connection with or arising out of the administration of, or otherwise related to, the Subchapter V Cases; the negotiation and pursuit of this Plan and all related agreements, instruments, and other documents; the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing, and any Entity bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct. The other protections provided by this Section shall be in addition to, and shall not limit, any other releases, indemnifications, injunctions, exculpations, any and all other applicable law or rules protecting the Protected Parties from liability. For the avoidance of doubt, nothing in this Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units.

## D. EXCULPATION

Notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any cause of action, Claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Subchapter V Cases, the Filing of the Subchapter V Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, Plan or any other contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of

Consummation, the issuance of securities pursuant to this Plan, or the distribution of property under this Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have, and upon completion of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e). Notwithstanding anything contained herein, no exculpation shall be given in contravention of *Bank of N.Y. Trust Co. v. Off. Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

E. RELEASES BY THE DEBTORS

Pursuant to Bankruptcy Code section 1123(b), and notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, and to the fullest extent permitted by applicable law, in exchange for their cooperation, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates (the "Debtor Releasing Parties") from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivate claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Subchapter V Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Subchapter V Cases, the negotiation, formulation, preparation, implementation or administration of this Plan, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (the "Debtor Release"). Notwithstanding anything contained herein, no release shall be given in contravention of *Bank of N.Y. Trust Co. v. Off. Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute

the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

For the avoidance of doubt, the Debtor Release shall not operate to waive, release, or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by a Final Order of the Court or any other court of competent jurisdiction; and/or (ii) the Rights of such Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Court.

F. RELEASE AND EXCULPATION INJUNCTION

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, fines, penalties, or liabilities released or exculpated pursuant to this Plan.

G. DISCHARGE OF CLAIMS

The Debtors shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date; however, the timing of the discharge will depend on whether this Plan is confirmed as a consensual plan or a cramdown plan pursuant to Bankruptcy Code sections 1191(a) or (b), respectively. *See* 11 U.S.C. § 1181(c).

### (1)  *Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)*

If this Plan is confirmed pursuant to Bankruptcy Code section 1191(a), the Debtors shall receive a discharge pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective

30

Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### (2)   *Cramdown Plan - Discharge Under Bankruptcy Code section 1192*

If this Plan is confirmed as a cramdown plan pursuant to Bankruptcy Code section 1191(b), the Debtors shall receive a discharge "as soon as practicable after completion by the [Debtors] of all payments due within the [Commitment Period]." *See* 11 U.S.C. § 1192. Except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Unless otherwise indicated, all rejections of Executory Contracts and Unexpired Leases in this Plan will be effective Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date and the completion of all Distributions contemplated under this Plan.

### H.   RETENTION, RESERVATION, AND PROSECUTION OF CAUSES OF ACTION

In accordance with Bankruptcy Code section 1123(b) or any corresponding provision of federal or state laws, and except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date, all Causes of Action shall be retained by the Debtors, and the Debtors may, in accordance with this Plan, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all of such Causes of Action. The Debtors will include in this Plan Supplement a non-exhaustive list of the Causes of Action that will be retained.

Subject to the immediately preceding paragraph, any Entity to who the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors

should assume that any such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of Claim against the Debtors in the Subchapter V Cases; (ii) the Debtors have objected to any such Entity's proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; or (v) any such Entity's schedule Claim has been identified by the Debtors as disputed, contingent, or unliquidated.

Except as otherwise explicitly provided in this Plan, nothing in this Plan shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Estate may have or choose to assert on behalf of the Debtors or their Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law. No entity may rely on the absence of a specific reference in this Plan to any Cause of Action or account receivable against it as an indication that the Debtors will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action or accounts receivable upon or after the confirmation or consummation of this Plan.

Prior to, on, or after the Effective Date, as applicable, all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date, as applicable, pursuant to applicable laws, without any requirement of further vote, consent, approval, authorization, or other action by such stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtors or notice to, order of, or hearing before the Bankruptcy Court.

## I.   RELEASE OF LIENS

Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors and the Reorganized Debtors.

## J.   LIABILITIES TO, AND RIGHTS OF, GOVERNMENTAL ENTITIES

**(1)**   As to the United States, nothing in this Plan shall limit or expand the scope of the release or injunction to which the Debtors are entitled to under the Bankruptcy Code. The release, injunction and exculpation provisions contained in this Plan are not intended and shall not be construed to bar the United States from, subsequent to entry of the Confirmation Order, pursuing any police or regulatory action, except to the extent those release and injunctive provisions bar a governmental unit from pursuing Claims.

32

(2) Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to a governmental unit under environmental law that is not a Claim; (2) any Claim of a governmental unit arising on or after the Effective Date; (3) any valid right of set-off or recoupment of the United States against a Debtor; or (4) any liability of the Debtors under environmental law to any governmental unit as the owner or operator of property that such Debtor owns or operates after the Effective Date, except those obligations to reimburse costs expended or paid by a governmental unit before the Effective Date or to pay penalties owing to a governmental unit for violations of environmental laws or regulations that occurred before the Effective Date; provided that the Debtors reserve all of their rights and defenses under applicable law with respect to any such Claims or liabilities. Nor shall anything in this Plan: (i) enjoin or otherwise bar the United States or any governmental unit from asserting or enforcing, outside the Bankruptcy Court, any liability described as not discharged in the preceding sentence, provided that the Debtors and the Reorganized Debtors reserve all of their rights and defenses under applicable law with respect to any such Claims or Liabilities; or (ii) divest any court of jurisdiction to determine whether any liabilities asserted by the United States or any governmental unit are discharged or otherwise barred by this Plan or the Bankruptcy Code.

(3) Nothing in this Plan shall release or exculpate any non-Debtor, including the Exculpated Parties, from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Exculpated Parties, nor shall anything in this Plan enjoin the United States from bringing any claim, suit, action or other proceeding against the Exculpated Parties for any liability whatsoever.

## IX.   CONDITIONS PRECEDENT TO EFFECTIVE DATE

### A. CONDITIONS PRECEDENT TO EFFECTIVE DATE

The following is a list of the conditions precedent to the Effective Date of this Plan, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section IX.C of this Plan:

1.   the Confirmation Order shall have been entered by the Bankruptcy Court confirming this Plan in form and substance acceptable to the Debtors, and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

2.   all governmental and material third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by this Plan shall be in full force and effect (which, in the case of an order of judgment of any Court, shall mean a Final Order), and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

33

3. all documents and agreements necessary to implement this Plan shall have (a) been tendered for delivery, and (b) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of this Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

4. no stay of the Confirmation Order shall then be in effect, and the Confirmation Order has become a Final Order.

**B. WAIVER OF CONDITIONS PRECEDENT**

The conditions to the Effective Date set forth in this Article IX may be waived only by consent of the Debtors without any notice to other parties in interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate this Plan. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion). The failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

**C. EFFECT OF NONOCCURRENCE OF CONDITIONS**

If the Effective Date does not occur, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

**X. RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Subchapter V Cases for, among other things, the following purposes:

1. to hear and determine all matters relating to the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance of Cure amounts and Claims resulting therefrom;

2. to hear and determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

3.      to Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against or Interest in a Debtor, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Interests;

4.      to ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan;

5.      to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

6.      to hear and determine any application to modify this Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

7.      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

8.      to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

9.      to issue orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan;

10.     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

11.     to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

12.     to determine any other matters that may arise in connection with or are related to this Plan, the Confirmation Order, any of this Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan or this Plan Supplement;

13.     to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Subchapter V Cases, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

14.     to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Subchapter V Cases (whether or not the Subchapter V Cases have been closed);

15.     to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

16.     to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

17.     to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Subchapter V Cases with respect to any Person;

18.     to hear any other matter related to this Plan and not inconsistent with the Bankruptcy Code; and

19.     to enter a Final Decree closing the Subchapter V Cases.

## XI.   MISCELLANEOUS PROVISIONS

### A.  AMENDMENT OR MODIFICATION OF THIS PLAN

Alterations, amendments, or modifications of this Plan may be proposed in writing by the Debtors at any time before the Confirmation Date; provided that this Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123 and the Debtors shall have complied with Bankruptcy Code section 1125. The Debtors may modify this Plan at any time after Confirmation and before substantial consummation, provided that this Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### B.  PLAN SUPPLEMENT

Draft forms of certain documents, agreements, instruments, schedules and exhibits specified in this Plan shall, where expressly so provided for in this Plan, be contained in this Plan Supplement Filed from time to time and shall be incorporated into the Plan. Unless otherwise expressly provided in this Plan, the Debtors may File any Plan Supplement until seven (7) days prior to the voting deadline and may alter, modify or amend any Plan Supplement in accordance with this Plan. Holders of Claims or Interests may obtain a copy of this Plan Supplement on the Debtors' website at https://cases.omniagentsolutions.com/?clientId=3697.

### C.  ADDITIONAL DOCUMENTS

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further

evidence the terms and conditions of this Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### D.  GOVERNING LAW

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent this Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provide otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

### E.  TIME

To the extent that any time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

### F.  SEVERABILITY

If any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### G.  REVOCATION

The Debtors reserve the right to revoke and withdraw this Plan prior to the entry of the Confirmation Order. If the Debtors revoke or withdraw this Plan, this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

### H.  RESERVATION OF RIGHTS

This Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan or this Plan Supplement

shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**I.    SUCCESSORS AND ASSIGNS**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**J.    SERVICE OF DOCUMENTS**

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| | |
|---|---|
| Debtors | Remarkable Healthcare, LLC |
| | 904 Emerald Blvd. |
| | Southlake, TX 76092 |
| | Attention: Jon Eric McPike |
| | |
| Counsel to Debtors | Gutnicki LLP |
| | 8080 N. Central Expy., Suite 1700 |
| | Dallas, Texas 75206 |
| | Attention: Liz Boydston and Alex Rahn |
| | lboydston@gutnicki.com |
| | arahn@gutnicki.com |
| | |
| | Gutnicki LLP |
| | 45 Rockefeller Plaza, Suite 200 |
| | New York, New York 10111 |
| | Attention: Max Schlan |
| | mschlan@gutnicki.com |
| | |
| United States Trustee | Office of the United States Trustee |
| | 110 N. College Ave., Suite 300 |
| | Tyler, TX 75702 |
| | Attention: John M. Vardeman |
| | john.m.vardeman@usdoj.gov |
| | |
| Subchapter V Trustee | Subchapter V Trustee |
| | 10501 N Central Expy., Suite 106 |
| | Dallas, TX 75231-2203 |
| | Attention: Mark A. Weisbart |
| | mweisbart@haywardfirm.com |

### K. ENTIRE AGREEMENT

Except as otherwise indicated, on the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of this Plan, all of which will have become merged and integrated into this Plan on the Effective Date.

### L. INCONSISTENCY

To the extent the Confirmation Order and/or this Plan is inconsistent with any other agreement entered into between the Debtors and any third party, this Plan shall control any previous agreements and the Confirmation Order shall control this Plan.

### M. DEFAULT

No default in the performance of this Plan shall automatically result in the termination of this Plan or constitute a revocation of the Confirmation Order. Unless otherwise specified in this Plan, if any party in interest believes that the Debtors/Reorganized Debtors are in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtors/Reorganized Debtors and Counsel to the Debtors prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court enforcement of the terms of this Plan.

### N. POST-CONFIRMATION DISTRIBUTION REPORTS

The Reorganized Debtors will file post-confirmation distribution reports within 45 days of making any Distribution under this Plan and shall comply with Local Rule 3022-1 when seeking a Final Decree.

Executed this 9th day of January, 2025.
Dallas, Texas

/s/ Laurie Beth McPike
Laurie Beth McPike
Chief Executive Officer
Remarkable Healthcare, LLC

And

/s/ Jon E. McPike
Jon E. McPike
Chief Operating Officer
Remarkable Healthcare, LLC

## **EXHIBIT A**

Projected Disposable Income



**REMARKABLE HEALTHCARE OF SEGUIN, LP FIVE-YEAR CASH FLOW FORECAST**

| Cash Flow Projections | Effective Date | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|
| **Revenue by Payor** | | | | | | |
| Private Pay | | $ 903,194.00 | $ 921,257.88 | $ 939,683.04 | $ 939,683.04 | $ 939,683.04 |
| Medicare Part A | | $ 1,696,293.00 | $ 1,781,107.65 | $ 1,870,163.03 | 1,402,622.27 | 1,402,622.27 |
| Medicaid | | $ 2,578,225.00 | $ 2,836,047.50 | $ 3,119,652.25 | 3,119,652.25 | 3,119,652.25 |
| Managed Care | | $ 1,008,784.00 | $ 1,109,662.40 | $ 1,220,628.64 | 1,220,628.64 | 1,220,628.64 |
| Medicare Part B | | $ 111,658.00 | $ 117,240.90 | $ 123,102.95 | 129,258.09 | 129,258.09 |
| Other Income | | $ 2,662.00 | $ 2,715.24 | $ 2,769.54 | 2,824.94 | 2,824.94 |
| **TOTAL Operating Revenue** | | $ 6,300,816.00 | $ 6,768,031.57 | $ 7,275,999.45 | $ 6,814,669.23 | $ 6,814,669.23 |
| **TOTAL QUIP Revenue** | | $503,051 | $503,051 | $503,051 | $503,051 | $503,051 |
| **TOTAL REVENUE** | | $ 6,803,867.00 | $ 7,271,082.57 | $ 7,779,050.45 | $ 7,317,720.23 | $ 7,317,720.23 |
| | | | | | | |
| **Expenses** | | | | | | |
| Payroll inc Tax & Benefits | | $ 2,877,847.00 | $ 2,910,253.58 | $ 3,126,194.39 | $ 2,938,622.73 | $ 2,938,622.73 |
| Contract Labor | | $ 132,807.00 | $ 135,360.63 | $ 145,404.39 | $ 136,680.13 | $ 136,680.13 |
| Rent | | $ 1,176,806.16 | $ 1,197,702.24 | $ 1,219,016.28 | $ 1,219,016.28 | $ 1,262,931.84 |
| Nursing & Med Supplies | | $ 209,112.00 | $ 224,617.99 | $ 241,284.64 | $ 226,807.56 | $ 226,807.56 |
| Dietary | | $ 175,820.00 | $ 188,857.33 | $ 202,870.55 | $ 190,698.32 | $ 190,698.32 |
| Pharmaceuticals | | $ 80,445.00 | $ 86,410.13 | $ 92,821.76 | $ 87,252.45 | $ 87,252.45 |
| Utilities, Phone, & Cable | | $ 179,225.00 | $ 179,225.00 | $ 192,523.50 | $ 180,972.09 | $ 180,972.09 |
| Repairs & Maintenance | | $ 23,530.00 | $ 23,530.00 | $ 25,275.93 | $ 23,759.37 | $ 23,759.37 |
| Consulting Services | | $ 47,108.00 | $ 28,214.00 | $ 30,307.48 | $ 28,489.03 | $ 28,489.03 |
| Professional Services | | $ 26,819.61 | $ 48,927.61 | $ 52,558.03 | $ 49,404.55 | $ 49,404.55 |
| Insurance - Commercial | | $ 109,184.00 | $ 111,796.00 | $ 120,091.26 | $ 112,885.79 | $ 112,885.79 |
| Depr & Amort | | $ 26,103.00 | $ 26,886.09 | $ 28,881.04 | $ 27,148.18 | $ 27,148.18 |
| Other Exp - Variable | | $ 57,776.00 | $ 58,931.52 | $ 63,304.24 | $ 59,505.98 | $ 59,505.98 |
| Other Exp - Fixed | | $ 432,399.96 | $ 461,519.91 | $ 495,764.69 | $ 466,018.81 | $ 466,018.81 |
| Office Supplies | | $ 14,878.00 | $ 15,981.23 | $ 17,167.03 | $ 16,137.01 | $ 16,137.01 |
| Travel & Meals | | $ 7,541.00 | $ 8,100.18 | $ 8,701.21 | $ 8,179.14 | $ 8,179.14 |
| Marketing | | $ 4,106.00 | $ 4,410.47 | $ 4,737.72 | $ 4,453.46 | $ 4,453.46 |
| Lab & Radiology | | $ 34,232.00 | $ 36,770.36 | $ 39,498.72 | $ 37,128.79 | $ 37,128.79 |
| Hskpg/Laundry Supplies | | $ 26,075.00 | $ 28,008.50 | $ 30,086.73 | $ 28,281.53 | $ 28,281.53 |
| Transportation | | $ 8,423.00 | $ 9,047.58 | $ 9,718.91 | $ 9,135.77 | $ 9,135.77 |
| Bad Debt | | $ 63,008.16 | $ 118,529.41 | $ 127,324.29 | $ 119,684.83 | $ 119,684.83 |
| Interest | | | | | | |
| **TOTAL Expenses - Summary** | | $ 5,713,245.89 | $ 5,903,079.74 | $ 6,273,532.79 | $ 5,970,261.80 | $ 6,014,177.36 |
| | | | | | | |
| **Net Income/Loss** | | $ 1,090,621.11 | $ 1,368,002.83 | $ 1,505,517.66 | $ 1,347,458.43 | $ 1,303,542.87 |
| | | | | | | |
| Interest | | | | | | |
| Depreciation/Amortization | | $ 26,103.00 | $ 26,886.09 | $ 26,886.09 | $ 26,886.09 | $ 26,886.09 |
| **EBITDA Cash Availability** | | $ 1,116,724.11 | $ 1,394,888.92 | $ 1,532,403.75 | $ 1,374,344.52 | $ 1,330,428.96 |

| EBITDAR Cash Availability | | | 2,293,530.27 | 2,670,991.16 | $ 2,751,420.03 | $ 2,593,360.80 | $ 2,593,360.80 |
|---|---|---|---|---|---|---|---|

| Cash Projections | Effective Date | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|
| Total Operating Revenue = | | $ 6,300,816.00 | $ 6,768,031.57 | $ 7,275,999.45 | $ 6,814,669.23 | $ 6,814,669.23 |
| Total Operating Cash Collections = | | $ 6,111,791.52 | $ 6,564,990.62 | $ 7,057,719.47 | $ 6,610,229.15 | $ 6,610,229.15 |
| Total QUIP Payments = | | $ 503,051.00 | $ 503,051.00 | $ 503,051.00 | $ 503,051.00 | $ 503,051.00 |
| Prior Year Remaining available cash | | $ 216,893.00 | $ 1,264,823.30 | $ 772,732.29 | $ 402,917.07 | $ 207,153.87 |
| 2024 A/R uncollected at 96% | | $ 1,274,605.00 | | | | |
| Capital Infusion/Laon | $ 3,000,000.00 | | - | - | - | - |
| Incoming Cash TOTAL = | $ 3,000,000.00 | $ 8,106,340.52 | $ 8,332,864.92 | $ 8,333,502.76 | $ 7,516,197.23 | $ 7,320,434.02 |
| Total Expenses = | | $ 5,713,245.89 | $ 5,903,079.74 | $ 6,273,532.79 | $ 5,970,261.80 | $ 6,014,177.36 |
| Cash NET DIFFERENCE = | $ 3,000,000.00 | $ 2,393,094.63 | $ 2,429,785.18 | $ 2,059,969.97 | $ 1,545,935.43 | $ 1,306,256.66 |

| Loan Servicing | Effective Date | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|
| Interest Payments | | $ 510,000.00 | $ 466,790.04 | $ 361,605.55 | $ 237,078.48 | $ 89,651.94 |
| Principal Payments | | | $ 571,991.52 | $ 677,176.01 | $ 801,703.08 | $ 949,129.62 |
| Balloon Payment | | | | | | |
| Total Annual Payments | | $ 510,000.00 | $ 1,038,781.56 | $ 1,038,781.56 | $ 1,038,781.56 | $ 1,038,781.56 |
| | | | | | | |
| Cash NET DIFFERENCE = | | $ 1,883,094.63 | $ 1,391,003.62 | $ 1,021,188.41 | $ 507,153.87 | $ 267,475.10 |

| Claims Payments | Effective Date | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|
| Alleon Replacement Liens | $ 421,034.00 | | | | | |
| Priority Tax Claims | | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | |
| Other Cure Claims | $ 100,000.00 | | | | | |
| Administrative Claims | $ 430,000.00 | $ 543,271.33 | $ 543,271.33 | $ 543,271.33 | | |
| West Wharton Payment | $ 480,000.00 | | | | | |
| KRS Cure Claim | $ 1,307,073.00 | | | | | |
| Lender Origination Fee | $ 45,000.00 | | | | | |
| General Unsecured Claims | | | | | $ 225,000.00 | $ 225,000.00 |
| TOTAL CLAIMS Payment | $ 2,783,107.00 | $ 618,271.33 | $ 618,271.33 | $ 618,271.33 | $ 300,000.00 | $ 225,000.00 |
| Cash NET DIFFERENCE = | $ 216,893.00 | $ 1,264,823.30 | $ 772,732.29 | $ 402,917.07 | $ 207,153.87 | $ 42,475.10 |

| Conservative Assumptions for QIPP Payments | | | | | | |
|---|---|---|---|---|---|---|
| | | 2025 | 2026 | 2027 | 2028 | 2029 |
| 2024 Q4 QIPP Payment = | | $125,763 | $125,763 | $125,763 | $125,763 | $125,763 |
| 2025 Q1 QIPP Payment = | | $125,763 | $125,763 | $125,763 | $125,763 | $125,763 |
| 2025 Q2 QIPP Payment = | | $125,763 | $125,763 | $125,763 | $125,763 | $125,763 |
| 2025 Q3 QIPP Payment = | | $125,763 | $125,763 | $125,763 | $125,763 | $125,763 |
| QIPP Payments TOTAL = | | $503,051 | $503,051 | $503,051 | $503,051 | $503,051 |

# **EXHIBIT B**

Liquidation Analysis

## LIQUIDATION ANALYSIS

|  | Current Value | Estimated Liquidation Value |
|---|---|---|
| **Cash & Cash Equivalents** | $            1,087.00 | $            1,000.00 |
| **Trademarks & Domain Name** | $            1,000.00 | $            1,000.00 |
| **Accounts Receivable** | $1,582,068.09 | $          395,517.02 |
| **Inventory** | $          125,000.00 | $            10,000.00 |
| **Office Equipment & Equipment** |  | $ |
| **Automobiles** | $            15,000.00 | $            3,500.00 |
| **Buildings & Land** |  | $ |
| **Lawsuits/Avoidance Actions** |  | $ |
| **Disposable Income** | $        2,631,994.00 | $ |
| **Total Assets at Liquidation Value** |  | $          411,017.02 |
| **Less Secured Creditor Recoveries** | | |
| **Less Administrative Expenses of the Debtors' Subchapter V Case** | | |
| **Estimated secured creditor expenses** |  | $          592,175.28 |
| **Admininstrative claim expenses** |  | $        2,018,432.45 |
| Estimated Admin Rent |  | $          460,432.45 |
| General Expenses |  | $          123,000.00 |
| West Wharton |  | $          420,000.00 |
| Estimated Debtors' Counsel Fees & Expenses* |  | $          800,000.00 |
| Estimated Valuation Expert Fees & Expenses |  | $          100,000.00 |
| Estimated Subchapter V Trustee Fees & Expenses* |  | $            10,000.00 |
| Estimated Plan Solicitation Agent Fees & Expenses* |  | $          100,000.00 |
| Estimated Tax Advisor Fees & Expenses |  | $            5,000.00 |
| **Priority Unsecured Claims (Taxes)** |  | $          300,000.00 |
| **Less Estimated Ch. 7 Trustee, Investment Banker & Counsel Fees** |  | $          100,000.00 |
|  |  |  |
| **Total Secured, Admin, Priority & Liquidation Costs** |  | $        2,910,607.73 |

| | |
|---|---|
| **Total Assets at Liquidation Value** | $          411,017.02 |
| **Less Total Secured, Admin, Priority & Liquidation Costs** | $        2,910,607.73 |
|  |  |
| **Balance Remaining for Unsecured Creditors** | $      (2,499,590.71) |
|  |  |
| **Estimated Unsecured Creditors Claims Pool After Expected Objections** | $        2,137,593.00 |
| **Estimated Percentage Recovery to Unsecured Creditors in Liquidation** | 0% |
| **Estimated Percentage Recovery to Unsecured Creditors Under Plan** | 20% |

## Exhibit B

**Redline Comparing Fourth Amended Plan to Third Amended Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CHAPTER 11** |
| | § | |
| **REMARKABLE HEALTHCARE OF** | § | **CASE NOS. 24-40612 & 24-40611** |
| **SEGUIN LP AND REMARKABLE** | § | |
| **HEALTHCARE LLC,**[1] | § | **(Jointly Administered)** |
| | § | |
| | § | **(Formerly Jointly Administered** |
| **DEBTORS.** | § | **under Lead Case: Remarkable** |
| | § | **Healthcare of Carrollton, LP, et al.,** |
| | § | **24-40605)** |

**~~THIRD~~FOURTH AMENDED JOINT SUBCHAPTER V PLAN OF
REORGANIZATION FOR REMARKABLE HEALTHCARE
OF SEGUIN LP AND REMARKABLE HEALTHCARE, LLC**

Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
8080 N. Central Expy., Suite 1700
Dallas, Texas 75206
Telephone: (469) 935-6699
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

Max Schlan (Admitted *Pro Hac Vice*)
45 Rockefeller Plaza
Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

Dated: January 6, 2025

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

# TABLE OF CONTENTS

**I.  PLAN AND CONFIRMATION REQUIREMENTS**........................................................**4**

A.  Brief History of the Business Operations of the Debtors................................................4
B.  Relationship with Landlord.............................................................................................4
C.  Relationship with Alleon Capital Partners, LLC.............................................................5
D.  The QIPP Partnership with West Wharton County Hospital District...............................7
E.  History of These Cases....................................................................................................8
F.  This Plan Meets the "Best Interest of Creditors" Test and Is "Fair and Equitable"......8
G.  The Debtors Will Be Able to Make All Distributions Contemplated Under this Plan.....8

**II.  DEFINITIONS AND CONSTRUCTION OF TERMS**............................................**8**

A.  Definitions.......................................................................................................................8
B.  Interpretation, Application of Definitions, and Rules of Construction...........................17

**III.  UNCLASSIFIED CLAIMS**...............................................................................................**17**

A.  Treatment of Administrative Claims..............................................................................17
B.  Treatment of Professional Fee Claims...........................................................................18
C.  Priority Tax Claims........................................................................................................18

**IV.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS 18**

A.  Classification and Treatment of Claims and Interests...................................................19
    *(1)  Class 1 – Secured Claims*...................................................................................19
    *(2)  Class 2 – Priority Unsecured Claims*................................................................19
    *(3)  Class 3 – General Unsecured Claims*................................................................20
    *(4)  Class 4 – Interests in the Debtors*.....................................................................20

**V.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES**.............................**21**

A.  Assumption and Rejection of Executory Contracts and Unexpired Leases....................21
B.  Cure of Defaults............................................................................................................22
C.  Rejection Claims............................................................................................................22
D.  Reservation of Rights.....................................................................................................22

**VI.  DISTRIBUTIONS**...............................................................................................................**23**

A.  Reorganized Debtors to Make Distributions..................................................................23
B.  Method of Payment........................................................................................................23
C.  Objections to and Resolution of Claims.........................................................................23
D.  Claims Objection Deadline............................................................................................23
E.  Disputed Claims.............................................................................................................23
F.  Delivery of Distributions...............................................................................................24
G.  Undeliverable or Unclaimed Distributions....................................................................24
H.  Setoff and Recoupment..................................................................................................24
I.  No Interest.....................................................................................................................24

**VII.  MEANS OF IMPLEMENTATION**................................................................................**25**

A.  General Settlement of Claims........................................................................................25
B.  Exit Financing...............................................................................................................25
C.  Plan Funding..................................................................................................................25
D.  Continued Corporate Operations...................................................................................25
E.  Continued Corporate Existence......................................................................................26
F.  Vesting of Assets...........................................................................................................26
G.  Corporate Governance...................................................................................................26
H.  Claims Objections..........................................................................................................27

I.        Section 1145 Exemption ................................................................................. 27

**VIII.        EFFECT OF PLAN CONFIRMATION** ............................................. **27**

A.        Binding Effect ............................................................................................ 27
B.        Plan Injunction ........................................................................................... 27
C.        Protected Party Injunction .......................................................................... 28
D.        Exculpation ................................................................................................ 28
E.        Releases by the Debtors .............................................................................. 29
F.        Release and Exculpation Injunction ........................................................... 30
G.        Discharge of Claims ................................................................................... 30
        (1)        *Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)* ... *30*
        (2)        *Cramdown Plan - Discharge Under Bankruptcy Code section 1192* .......... *31*
H.        Retention, Reservation, and Prosecution of Causes of Action ................... 31
I.        Release of Liens ......................................................................................... 32
J.        Liabilities to, and Rights of, Governmental Entities .................................. 32

**IX.        CONDITIONS PRECEDENT TO EFFECTIVE DATE** ........................ **33**

A.        Conditions Precedent to Effective Date ..................................................... 33
B.        Waiver of Conditions Precedent ................................................................. 34
C.        Effect of Nonoccurrence of Conditions ...................................................... 34

**X.        RETENTION OF JURISDICTION** ..................................................... **34**

**XI.        MISCELLANEOUS PROVISIONS** ..................................................... **36**

A.        Amendment or Modification of this Plan .................................................... 36
B.        Plan Supplement ......................................................................................... 36
C.        Additional Documents ................................................................................ 36
D.        Governing Law .......................................................................................... 3637
E.        Time ........................................................................................................... 37
F.        Severability ................................................................................................ 37
G.        Revocation .................................................................................................. 37
H.        Reservation of Rights ................................................................................. 37
I.        Successors and Assigns .............................................................................. 3738
J.        Service of Documents ................................................................................. 38
K.        Entire Agreement ....................................................................................... 3839
L.        Inconsistency .............................................................................................. 3839
M.        Default ....................................................................................................... 39
N.        Post-Confirmation Distribution Reports ..................................................... 39

**EXHIBIT A** .................................................................................................... **40**

**EXHIBIT B** .................................................................................................... **41**

## I.  PLAN AND CONFIRMATION REQUIREMENTS

To confirm a plan under Bankruptcy Code section 1191, whether this Plan is consensual or not, certain requirements must be satisfied under Bankruptcy Code section 1129(a), including, without limitation, the "Best Interest of Creditors" test set forth under Bankruptcy Code section 1129(a)(7).  *See* 11 U.S.C. § 1191. Thus, this Plan must provide Holders of Allowed Claims with more than they would receive if the Debtors' filed for relief under Chapter 7 of the Bankruptcy Code.  Additionally, this Plan must be "fair and equitable" (as defined by section 1191(c)), and the Bankruptcy Court must find that the Debtors will be, or are reasonably likely to be, able to make the Distributions as contemplated by this Plan. Additionally, this Plan must include: (a) a brief history of the Debtors' business operations; (b) the Debtors' liquidation analysis; and (c) projections with respect to the Debtors' ability to make the Distributions provided for under this Plan. *See* 11 U.S.C. § 1190(1).

The Debtors submit that this Plan: (a) provides the necessary content required by Bankruptcy Code section 1190; and, as set forth more fully below, (b) is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, Holders of Allowed Claims will receive more than they would in a hypothetical chapter 7 liquidation; (ii) is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) is feasible as the Debtors will be able to make the Distributions contemplated under this Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

### A.  BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS

The Remarkable Healthcare Debtors, including Remarkable Healthcare of Seguin LP ("RH Seguin") and Remarkable Healthcare, LLC ("RH LLC") (collectively "Remarkable") were formed in Texas from 2010 to 2013 to manage and operate skilled nursing facilities in Texas. RH Seguin's facility services approximately 270 resident patients. As of March 20, 2024 (the "Petition Date"), the Debtors employed approximately 490 employees who work in the field and provide general business functions, both on a full and part-time basis, in various capacities to keep the Debtors' business operating successfully and efficiently. Remarkable is focused on the individual who needs healthcare services after their hospital stay and offers both services to help individuals return home as well as long-term services for those who require extended care. Stabilizing the patient from a clinical, nursing, and social aspect is Remarkable's top priority.

### B.  RELATIONSHIP WITH LANDLORD

On July 8, 2010, a certain Lease Agreement and Security Agreement by and between Guadalupe NH Development, Ltd (the "Former Landlord") and LBJM, L.L.C. was entered to lease the property with the common street address 1339 Eastwood Drive, Seguin, Guadalupe County, Texas 78155 (the "Original Seguin Lease"). The Original Seguin Lease was then assigned via an Assignment of Lease Agreement and Security Agreement, dated July 8, 2010, by and between LBJM, LLC (as the Assignor) and RH Seguin (as the Assignee).

On or about February 12, 2018, Debtors along with related debtors Remarkable Healthcare of Fort Worth, LP ("RH Fort Worth"), Remarkable Healthcare of Dallas, LP ("RH Dallas"), and Remarkable Healthcare of Carrollton, LP ("RH Carrollton") (together, the "Related

4

Debtors")[2] filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), jointly administered under case number 18-40295 (the "2018 Bankruptcy Cases"). In the 2018 Bankruptcy Cases, the Court confirmed the Debtors' plan on May 16, 2019, and the cases were closed on April 4, 2020.

In the 2018 Bankruptcy Cases, the confirmed plan included an agreement in the form of a Promissory Note (the "Cure Note") executed May 10, 2019 to cure the Original Seguin Lease as well as leases held by the Related Debtors. On November 21, 2022, the Former Landlord assigned the Original Seguin Lease to KRS Seguin (the "KRS Landlord"). Notwithstanding the assignment, the Former Landlord retained the Cure Note. Counsel for the KRS Landlord in these Cases is also counsel for the Former Landlord and has filed proof of claim No. 14 in these Cases for $995,867.80 on behalf of the Former Landlord against the Debtors and the Related Debtors.

### C.  RELATIONSHIP WITH ALLEON CAPITAL PARTNERS, LLC

On or about June 7, 2019, Debtors and Related Debtors entered into a Loan and Security Agreement (the "Loan Agreement") with Alleon Capital Partners, LLC ("Alleon" or the "Secured Lender"), which provided that Alleon would extend credit to Debtors to finance Debtors' business operations. Also, on or about June 7, 2019, RH-LLC, Remarkable Investments, LP, LBJM, LLC, Remarkable Duo, LLC, Remarkable Partners of Fort Worth, LP, Remarkable Partners, LP, Remarkable Partners of Dallas, LP, and Remarkable Rehabilitation, LP, along with Laurie Beth McPike and Jon McPike (collectively, the "Guarantors"), executed certain Guaranty and Security Agreement ("Guarantees," and together with the Loan Agreement and all documents executed in connection therewith, the "Security Documents"), pursuant to which Guarantors guaranteed payment and performance of all present and future obligations of the Debtors to Alleon. Additionally, the Debtors and the Related Debtors granted Alleon a security interest in all of the Debtors' and the Related Debtors' present and future accounts, chattel paper, goods (including inventory and equipment), instruments, investment property, documents, and general intangibles, letter of credit rights, commercial tort claims, deposit accounts, the billing reserve cash collateral, and the proceeds thereof (the "Cash Collateral" or "Collateral").

In the 2018 Bankruptcy Cases, Alleon provided new financing to Debtors and the Related Debtors for their plan of reorganization. The liens and UCC-1 Financing Statements of Comerica Bank were assigned to Alleon as security for the new financing. Under the terms of the Security Documents, Alleon would make advances to Debtors so long as, before and after such advance, the unpaid balance of all cash obligations under the Loan Agreement (the "Loan Balance") did not exceed the allowable amount as defined in the Loan Agreement (the "Borrowing Base"). Debtors were required to pay Alleon, on demand, if the Loan Balance exceeded the allowable amount (an "Over Advance Amount").

Pursuant to the Loan Agreements, Debtors, Regions Bank, and Alleon also entered into certain Deposit Account Control Agreements ("DACAs"). Pursuant to the DACAs, the Debtors

---

[2] The Related Debtors filed for chapter 11 along with the Debtors on the Petition Date. On October 10, 2024, the Related Debtors' cases converted to chapter 7.

authorized, and Regions Bank was required to complete, a daily sweep of all funds in the Debtors' deposit accounts to be paid to Alleon.

In December of 2022, Alleon changed the way they calculate the Borrowing Base. Rather than the formula in the original Loan Agreement which based the Borrowing Base on accounts receivables, the new formula now involved a three-month average of collections over a thirty-day period. In January of 2023, the Debtors signed an amendment to the Loan Agreement, which was a renewal of the original term of the Loan Agreement (the "Second Amendment"). The Second Amendment also altered the "Maximum Amount" for the Borrowing Base, reducing it from $5,000,000 to $3,000,000. These two changes ultimately reduced the Debtors' Borrowing Base from over $4.2 million to $1.9 million.  And, on top of that, the Debtors already had more than $1.9 million drawn down on the line at the time of this change, but Alleon made a concession that it would not default on the Debtors.

Shortly thereafter, the Second Amendment was changed to a Third Amendment dated February 7, 2023 (the "Third Amendment"). The Third Amendment imposed an increased interest to default rate, even though the Debtors' cash flow had temporarily decreased due to industry-specific reasons and despite Alleon having agreed not to default the Debtors. As a result, Alleon created a pull-on cash from the Debtors, cash that the Debtors needed to keep operations cash flowing.

During the second quarter of 2023, the Debtors needed to draw down additional funds on their line of credit because census levels and revenues had not yet returned to pre-COVID levels. But the Debtors could not because any excess line of credit no longer existed. Alleon, however, agreed to extend up to a limit but imposed egregious penalties in exchange, and the Debtors had no other options but to accept those penalties. Alleon refused to return collected cash to the Debtors for operation. By withholding cash collections, Alleon was able to force the Debtors to sign the amended agreements that provided for higher fees and higher interest due to Alleon's forced default.

On or about May 23, 2023, Alleon, the Debtors, and the Related Debtors entered into a Forbearance Agreement and Fourth Amendment to the Loan Agreement (the "Forbearance Agreement"). The Forbearance Agreement imposed weekly fees in excess of $35,000.00 even though Alleon knew that the Debtors were not in a position to pay such fees. Nevertheless, the Debtors managed to sustain their operations for a few months because of the ERC tax credits received from the federal government, which were used to fund payroll and patient care needs.

To add to the Debtors' expenses, the census had increased by 23% since the end of 2022, but the Debtors would not see this increase in revenue from the increased census for a few months because the Medicare Advantage Plans and State Medicaid payments were increasingly delayed due to no government oversight and new federal Medicaid laws related to annual patient eligibility renewals. At the same time, the increase in the census led immediately to the Debtors having additional expenses due to take of the newly admitted patients.

Ultimately, the Debtors and Related Debtors were forced to file for subchapter V of chapter 11 in November of 2023. The Debtors, however, based on advice from prior counsel and misleading characterizations by Alleon and the KRS Landlord that they would work with the

Debtors if they dismissed their cases, voluntarily agreed to dismiss the case in February of 2023. Shortly, thereafter, it became clear that Alleon would not follow through on its word to accept $10,000 per week from the Debtors and, on top of that, beginning on or about 8:00 a.m. March 1, 2024, Alleon swept every single dollar the Debtors and the Related Debtors received each day and refused to fund, advance, or return the Debtors' money. Between March 1, 2024 and March 20, 2024, Alleon cumulatively swept $951,860.43 of which approximately $302,885.72 is attributable to the Debtors.

### D. THE QIPP PARTNERSHIP WITH WEST WHARTON COUNTY HOSPITAL DISTRICT

In late 2023, while in bankruptcy, Debtor RH Seguin started working toward entering into the Quality Incentive Payment Program for Nursing Homes ("QIPP") through an arrangement with West Wharton County Hospital District ("WWCHD"). The QIPP would allow RH Seguin to net additional revenues starting in the fourth quarter of 2024.  With the KRS Landlord's consent, on March 1, 2024, the RH Seguin executed a management agreement with WWCHD. In addition to a management agreement, WWCHD and RH Seguin entered into a sublease Dated as of March 1, 2024, and an Operations Transfer Agreement between Debtor Remarkable Healthcare, LLC and WWCHD. The KRS Landlord consented to the sublease.

Entering the QIPP program required Debtor RH Seguin to execute change of ownership ("CHOW") documents to transfer its Medicare Identification Number and provider agreements to WWCHD. The CHOW process put a hold on not only RH Seguin's ability to bill Medicaid (which accounts for the majority of their patients) for the entire time from March 1, 2024 until the CHOW is complete, (the "CHOW Hold"), but the CHOW Hold has also held up certain Medicare payments as well. Once the CHOW Hold was released, the Debtors believed they would begin to see a substantial influx of collections on their pre- and post-petition accounts receivables. Nevertheless, even with the CHOW being finalized, the Debtors encountered some billing issues related to CMS and the new provider number further holding up the expected influx of accounts receivables. With the post-petition billings able to resume and the return of full collections, the Debtors should not have a problem paying rent and other expenses as well as their creditors through this Plan.

A dispute also arose between the Debtors and WWCHD regarding interim working capital advances made under the management agreement and the withholding of Medicaid funds necessary to satisfy the operating expenses of the Debtors.  The parties came to a resolution as set forth in the *Amended Agreed Order Granting Debtors' Motion to Compel West Wharton County Hospital District to Turnover Funds* [Case No. 24-40605; Dkt. No. 433] (the "WWCHD Settlement Order").  In sum, the WWCHD Settlement Order and corresponding Settlement Term Sheet provide for WWCHD releasing all Medicaid funds to the Debtors in exchange for a secured claim of $420,000 (the "WWCHD Claim"). The Debtors will satisfy the WWCHD Claim with funds from exit financing or the QIPP Supplemental Payment.

7

### E. HISTORY OF THESE CASES

On March 20, 2024 (the "Petition Date"), the Debtors and the Related Debtors commenced these Cases by filing voluntary petitions for relief under subchapter V of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. On March 26, 2024, Mark Weisbart was appointed Subchapter V Trustee in these Cases. No other trustee or committee has been appointed. On April 26, 2024, the Related Debtor RH Fort Worth ceased operations. On May 13, 2024, the operations for Related Debtors, RH Carrollton and RH Dallas, were transitioned to new management pursuant to the terms of the Amended Show Cause Order entered on May 10, 2024, and as amended on May 14, 2024. On October 10, 2024, the Court entered the *Order Granting DFW Debtors' Emergency Motion to Convert Chapter 11 Cases to Chapter 7* [Case No. 24-40605; Dkt. No. 423] converting the Related Debtors cases to chapter 7.

Debtors RH Seguin and Debtor RH LLC continue to manage and operate their businesses and property as debtors in possession pursuant to Bankruptcy Code sections 1107, 1108, and 1184.

### F. THIS PLAN MEETS THE "BEST INTEREST OF CREDITORS" TEST AND IS "FAIR AND EQUITABLE"

In accordance with Bankruptcy Code section 1191(c), this Plan provides that all Distributions will be funded with funds from exit financing and the Debtors' projected Disposable Income over the Commitment Period. The Debtors' exit financing commitment is anticipated at $3 million with total projected Disposable Income for the Commitment Period estimated at just over $2.6 million. Attached hereto as Exhibit A is the Debtors' projected Disposable Income analysis. Additionally, the Debtor's Liquidation Analysis, attached hereto as Exhibit B demonstrates that this Plan is in the best interests of creditors. ~~Together the Plan establishes that, during the Commitment Period, Holders of General Unsecured Claims, should receive 100% Distributions on their Claims.~~

Accordingly, this Plan complies with the "best interest of creditors" test and is "fair and equitable" because it proposes to provide total Distributions to Holders of Allowed Claims that exceed the Liquidation Value and are not less than the Debtors' projected Disposable Income for the Commitment Period.

### G. THE DEBTORS WILL BE ABLE TO MAKE ALL DISTRIBUTIONS CONTEMPLATED UNDER THIS PLAN

In accordance with Bankruptcy Code sections 1191(c)(3)(A)(i) and (ii), this Plan demonstrates that the Debtors have sufficient Cash and will have sufficient future earnings to provide regular, annual Pro Rata Share Distributions to Holders of Allowed General Unsecured Claims over the Commitment Period.

## II. DEFINITIONS AND CONSTRUCTION OF TERMS

### A. DEFINITIONS

8

"*Remarkable*" or "*Remarkable Healthcare*" means Remarkable Healthcare of Seguin, LP and Remarkable Healthcare, LLC.

"*941 Taxes*" means those taxes set forth on IRS Form 941, including income taxes, Social Security tax, and Medicare tax withheld from employee paychecks as well as the employer portion of Social Security tax and Medicare tax.

"*Administrative Claim*" means any Claim against any Debtor for costs and expenses of administration of the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) and all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5).

"*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, with the exception of Professional Fee Claims, which shall be the first Business Day that is 30 days after the Effective Date.

"*Affiliate*" means an "affiliate," as defined in Bankruptcy Code section 101(2).

"*Allowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim Filed by the applicable Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or a Claim or Interest for which a Proof of Claim or request for payment of Administrative Claim expressly is not or shall not be required to be Filed under this Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not Contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest that is Allowed pursuant to this Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by this Plan (including the Claims Objection Deadline), the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. Unless otherwise specified in this Plan or in an order of the Bankruptcy Court allowing such Claim or Interest, "Allowed" in reference to a Claim or Interest shall not include: (1) any interest on the amount of such Claim accruing from and after the Petition Date; (2) any punitive or exemplary damages; (3) any fine, penalty or forfeiture; or (4) any attorneys' fees and expenses. Any Claim or Interest that has been or is hereafter listed in the Schedules as Contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Bankruptcy Code section 502(d) shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a

9

request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest.

"*Avoidance Actions*" means causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Texas, having jurisdiction over the Subchapter V Cases or, if the Bankruptcy Court ceases to exercise jurisdiction over the Subchapter V Cases, such court or adjunct thereof that exercises jurisdiction over the Subchapter V Cases in lieu of the United States Bankruptcy Court for the Eastern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"*Bar Date(s)*" means the Claims Bar Date, the Governmental Bar Date, or the Rejection Damages Bar Date, as applicable; and "Bar Dates" means a collective reference to the Claims Bar Date, the Governmental Bar Date, and the Rejection Damages Bar Date.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case now owned or hereafter acquired by the Debtors and/or their Estates, and in each case, whether known or unknown, Contingent or non-Contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Subchapter V Cases, including through the Effective Date.

"*Claim*" means a "claim," as that term is defined in Bankruptcy Code section 101(5), against any Debtor.

"*Claims Bar Date*" means the date for filing Proofs of Claim, May 29, 2024.

"*Claims Objection Deadline*" means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, and (b) such other date as may be specifically fixed by order of the Bankruptcy Court.

"*Claims Register*" means the official register of Claims.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code section 1122(a).

"*Collateral*" means any property or interest in property of the Estates subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

"*Commitment Period*" means the five-year period contemplated and set forth under Bankruptcy Code section 1191(c).

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under Bankruptcy Code section 1128 at which the Debtors seek entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

"*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

"*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Consummation*" means the occurrence of the Effective Date.

"*Contingent*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, any contingent or unliquidated Claim asserted or which may be asserted against the Debtors.

"*Cure Notice*" means a notice sent to counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under this Plan pursuant to Bankruptcy Code section 365, which shall include: (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) the proposed amount to be paid on account of Cure Claims, and (c) procedures for resolution by the Bankruptcy Court of any related disputes; provided that the Schedule of Assumed Executory Contracts and Unexpired Leases and any amended Schedule of Assumed Executory Contracts and Unexpired Leases may each constitute a "Cure Notice" hereunder.

11

"*Cure*" or "*Cure Claim*" means any Claim (unless waived or modified by the applicable counterparty) against a Debtor based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Bankruptcy Code section 365, other than a default that is not required to be cured pursuant to Bankruptcy Code section 365(b)(2).

"*Debtor Release*" has the meaning ascribed to such term in Article VIII.E.

"*Debtor Releasing Parties*" has the meaning ascribed to such term in Article VIII.E.

"*Debtors*" means, collectively, Remarkable Healthcare of Seguin, LP and Remarkable Healthcare, LLC.

"*Disallowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, a Claim or Interest, or any portion thereof. that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as Contingent, Disputed or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disposable Income*" means Debtors' "disposable income" as defined under Bankruptcy Code section 1191(d).

"*Disputed*" means, with respect to any Claim or Interest, or any portion thereof, a Claim or Interest, or any portion thereof, that is not yet Allowed, including (a) any Claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection Filed by the Claims Objection Deadline or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court; (c) any Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, (d) any Claim or Interest evidenced by a Proof of Claim which amends a Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, and (e) any Claim or Interest that is not an Allowed Claim or Allowed Interest or a Disallowed Claim or a Disallowed Interest.

"*Distribution*" means Cash, property, interests in property, or other value distributed by the Reorganized Debtors to Holders of Allowed Claims, or their designated agents, under this Plan.

"*Effective Date*" means the date which is the first Business Day on which the conditions set forth in Article IX.B have been satisfied or waived.

"*Entity*" shall have the meaning set forth in Bankruptcy Code section 101(15).

"*Estate*" means the estate of any Debtor created under Bankruptcy Code sections 301 and 541 upon commencement of the applicable Debtor's Subchapter V Cases.

"*Exculpated Parties*" means collectively, and in each case in their capacity as such during the Subchapter V Cases the Debtors and Reorganized Debtors and each of their directors, officers, attorneys, investment bankers, accounts, consultants, and other Professionals.

12

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Exit Credit Agreement*" means that certain Term Loan Agreement entered into on January 2, 2025, by and among, the Reorganized Debtors and the Exit Lender in connection with the borrowing of the New Loan and substantially in the form contained in the Plan Supplement.

"*Exit Lender*" means the lender from time-to-time party to the Exit Credit Agreement.

"*Facilities Leases*" means the Unexpired Leases and all related documents with respect to the Facilities, including but not limited to, as applicable, master leases, subleases, and guarantees.

"*Facilities*" means the Facilities owned by the Landlord and previously or currently operated by the Debtors.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Subchapter V Cases.

"*Final Decree*" means the order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Subchapter V Cases.

"*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the docket in the Subchapter V Cases (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

"*General Unsecured Claim*" means any Unsecured Claim.

"*Governmental Bar Date*" means the date for Governmental Units to file Proofs of Claim, September 16, 2024.

"*Governmental Unit*" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"*Gutnicki*" means Gutnicki LLP.

"*Holder*" means the beneficial holder of any Claim or Interest.

"*Impaired*" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

"*Interest*" means any "equity security" in a Debtor, as defined in Bankruptcy Code section 101(16), including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

"*KRS*" or "*Landlord*" means KRS Seguin, LLC, Kilgore Property Management, LLC, and applicable affiliates.

"*Lien*" means "lien," as defined in Bankruptcy Code section 101(37).

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Texas, or any other court having jurisdiction over the Subchapter V Cases.

"*New Loan*" means that certain senior secured loan to be borrowed on the Effective Date by the Reorganized Debtor pursuant to the Exit Credit Agreement in an aggregate principal amount of $3 million.

"*Petition Date*" means March 20, 2024, the date on which the Debtors commenced the Subchapter V Cases as applicable to each particular Debtor.

"*Plan*" means this *Third Amended Subchapter V Plan of Reorganization for Remarkable Healthcare of Seguin, LLP and Remarkable Healthcare, LLC*, dated as of January 6, 2025, including all exhibits, supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Documents*" means this Plan, this Plan Supplement, and all the exhibits and schedules attached to each of the foregoing.

"*Plan Proponents*" means the Debtors.

"*Plan Supplement*" means the supplemental documents, schedules, and exhibits to this Plan to be Filed by the Debtors containing substantially final forms of, among other things, the Exit Credit Agreement, the Schedule of Rejected Executory Contracts and Unexpired Leases. The Debtors shall have the right to amend all of the documents contained in, and exhibits to, this Plan Supplement through the Effective Date.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

"*Priority Unsecured Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, which is entitled to priority under Bankruptcy Code section 507(a).

14

"*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under this Plan.

"*Professional Fee Claim*" means any Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

"*Professional Fee Claims Bar Date*" means the first business day which is 45 days after the Effective Date.

"*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered before or on the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331.

"*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Subchapter V Cases.

"*Protected Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors and the Reorganized Debtors; (b) the Debtors' Professionals: Gutnicki, LLP and Omni; and (c) the individual members of the Debtors' management.

"*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

"*Rejected Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to this Plan, filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date.

"*Rejection Claims*" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) by any of the Debtors, as limited, in the case of a rejected Unexpired Lease, by Bankruptcy Code section 502(b)(6).

"*Rejection Damages Bar Date*" means the date by which Rejection Claims must be filed, 30 days after the later of (i) the Confirmation Date, or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease.

"*Related Parties*" means, with respect to any Person, such Person's current and former Affiliates, partners, subsidiaries, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other

15

Professionals, together with their respective successors and assigns, in each case in their capacity as such.

"*Released Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors and the Reorganized Debtors; (b) the Debtors' Professionals: Gutnicki, LLP and Omni; (c) the individual members of the Debtors' management; and (d) the Exit Lender.

"*Releasing Parties*" shall mean the Debtor Releasing Parties.

"*Reorganized Debtors*" means the Debtors and any successor thereto after the Effective Date.

"*Remarkable*" means Remarkable Healthcare of Seguin, LP and Remarkable Healthcare, LLC.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs Filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such Schedules may be amended, modified, or supplemented from time to time.

"*Secured Claim*" means any Claim against any Debtor: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to this Plan.

"*Seguin Lease*" means the Lease Agreement and Security Agreement By and Between Guadalupe NH Development, Ltd. And LBJM, L.LC. Dated July 8, 2010 for the premises with the common street address of 1339 Eastwood Drive, Seguin, Guadalupe County, Texas 78155. This lease was assigned on November 21, 2022 from the former landlord, Guadalupe NH Development, Ltd. to the current Landlord KRS Seguin.

"*Subchapter V Case(s)*" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court being formerly jointly administered under Case No. 24-40605, and jointly administered since October 10, 2024 under Case No. 24-40611.

"*Subchapter V Trustee*" means Mark Weisbart.

16

"*U.S. Trustee*" means the Office of the United States Trustee for the Eastern District of Texas.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is "unimpaired" within the meaning of Bankruptcy Code section 1124.

"*Unsecured Claim*" means any Claim other than Administrative Claims, Secured Claims, and Priority Unsecured Claims.

"*West Wharton*" or "*WWCHD*" means West Wharton County Hospital District.

**B.  INTERPRETATION, APPLICATION OF DEFINITIONS, AND RULES OF CONSTRUCTION**

The following rules of construction, interpretation, and application shall apply:

(1)     Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

(2)     Unless otherwise specified, each section, article, schedule, or exhibit reference in this Plan is to the respective section in, article of, schedule to, or exhibit to this Plan.

(3)     The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

(4)     The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of this Plan.

(5)     A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

(6)     The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.

(7)     Unless otherwise provided, any reference in this Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

(8)     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

17

### III.   UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes and Interests set forth in Article IV of this Plan.

#### A.   TREATMENT OF ADMINISTRATIVE CLAIMS

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Administrative Claim, regular payments in Cash, throughout the Commitment Period, totaling not less than the full unpaid amount of such Allowed Administrative Claim, *provided*, however, that all 941 Taxes arising on or after the Petition Date shall be paid in full upon the Effective Date.

All requests for payment of Administrative Claims must be Filed and served on the Debtors or Reorganized Debtors, as applicable, pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Objections to such requests, if any, must be Filed and served on the Debtors or Reorganized Debtors, as applicable, and the requesting party no later than 15 days after the earlier of (i) the Administrative Claims Bar Date or (ii) the date such request for payment of an Administrative Claim is filed. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

#### B.   TREATMENT OF PROFESSIONAL FEE CLAIMS

All requests for payment of Professional Fee Claims must be Filed no later than the Professional Fee Claims Bar Date. All such final requests will be subject to approval of the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules. Unless otherwise agreed to, once approved by the Bankruptcy Court, Allowed Professional Fee Claims shall be paid with an amount of Cash equal to the full unpaid amount of the Allowed Professional Fee Claim (1) on or promptly thereafter the Effective Date or (2) the first Business Day after the date that is 30 calendar days after the date on which a Professional Fee Claim becomes an Allowed Professional Fee Claim.

#### C.   PRIORITY TAX CLAIMS

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment with the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim an amount of Cash equal to the full unpaid amount of such Allowed Tax Claim in regular installments over a period not greater than the Commitment Period in a manner not less favorable  than the most favored General Unsecured Claim provided for by the Plan.

18

## IV.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Pursuant to Bankruptcy Code sections 1122, 1123, and 1190, Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to this Plan, as set forth herein. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan is premised upon the substantive consolidation of the Debtors solely for the purposes of voting, determining which Classes have accepted this Plan, confirming this Plan, and the resultant treatment of Claims and Interests and Distributions under this Plan.

This Plan contemplates the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Estimated Recovery |
|-------|-------------------|--------|---------------|--------------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | ~~Unimpaired~~Impaired | ~~Deemed~~Allowed to ~~Accept~~Vote | ~~100~~20% |
| 4 | Equity Interests | Unimpaired | Deemed to Accept | 100% |

### A.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Except to the extent that the Debtors or the Reorganized Debtors, as applicable, and a Holder of an Allowed Claim or Allowed Interest, as applicable, agree in writing to less favorable treatment for such Allowed Claim or Allowed Interest, as applicable, such Holder shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon thereafter as reasonably practicable.

### (1)    Class 1 – Secured Claims

*Classification*. Class 1 consists of all Secured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Secured Claim and the Debtors or the Reorganized Debtors, as applicable agree in writing to less favorable treatment of its Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Secured Claim: (i) payment in full, in Cash, of the unpaid portion of its Allowed Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes Allowed; (ii) delivery of the Collateral securing such Allowed Secured Claim; (iii) Reinstatement of the

19

Secured Claim; or (iv) such other treatment as the Debtors or Reorganized Debtors, as applicable and the Holder of such Allowed Secured Claim may agree.

*Voting*. Class 1 is Unimpaired. Holders of Allowed Secured Claims in Class 1 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Secured Claims are not entitled to vote to accept or reject this Plan.

### (2)    **Class 2 – Priority Unsecured Claims**

*Classification*. Class 2 consists of all Priority Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Priority Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable agree in writing to less favorable treatment of its Allowed Priority Unsecured Claim, each Holder of an Allowed Priority Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Priority Unsecured Claim: (i) payment in full, in Cash, on the later of the Effective Date and the date on which such Priority Unsecured Claim becomes Allowed; (ii) payment in the ordinary course of business between the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim; or (iii) such other treatment as the Debtors or Reorganized Debtors, as applicable and the Holder of such Allowed Priority Unsecured may agree.

*Voting*. Class 2 is Unimpaired. Holders of Allowed Priority Unsecured Claims in Class 2 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Priority Unsecured Claims are not entitled to vote to accept or reject this Plan.

### (3)    **Class 3 – General Unsecured Claims**

*Classification*. Class 3 consists of all General Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment of its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed General Unsecured Claim, its Pro Rata share of Debtors' projected Disposable Income (as set forth under Exhibit A to this Plan). In accordance therewith, Debtors will make Distributions on account of Allowed General Unsecured Claims as follows:

- On an annual basis beginning in the ~~second~~fourth year after this Plan goes effective, after satisfaction in full of all Allowed Secured Claims, Administrative Expense Claims, Professional Fee Claims, and Priority Unsecured Claims, the Debtors shall make Distributions of all available disposable income to all Holders of Allowed Unsecured Claims on a Pro Rata basis.

*Voting*. Class 3 is ~~Unimpaired. Holders of Allowed General Unsecured Claims in Class 3 are conclusively presumed to have accepted this Plan under Bankruptcy Code section~~

~~1126(f)~~Impaired. Holders of Priority Unsecured Claims are ~~not~~ entitled to vote to accept or reject this Plan.

### (4)    Class 4 – Interests in the Debtors

*Classification*. Class 4 consists of all Interests in the Debtors.

*Treatment*. Holders of Interests in Debtors shall retain such Interests. Holders of Interests in the Debtors shall not receive any Distribution under this Plan on account of such Interests.

*Voting*. Class 4 is Unimpaired Holders of Allowed Interests in Class 4 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Interests are not entitled to vote to accept or reject this Plan.

## V.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.   ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Schedule of Rejected Executory Contracts and Unexpired Leases will be deemed assumed by the applicable Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to Bankruptcy Code sections 365 and 1123. The Debtors reserve the right to reject any executory contrary or Unexpired Lease until the Confirmation Date.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtors in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of the Subchapter V Cases or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to this Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by this Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases will be deemed to have been rejected. The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the assumptions as of the Effective Date. All rejections of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date, unless such Executory Contract or Unexpired Lease (i) previously has been assumed or rejected by the appliable Debtor; (ii) expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume or reject pending before the Court as of the Confirmation Date; (iv) is identified in this Plan Supplement as an Executory Contract or Unexpired Lease to be assumed; (v) is an insurance policy; or (vi) is otherwise indicated in this Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan.

22

## B. CURE OF DEFAULTS

Any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash by the Debtors on the Effective Date or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure payments, (b) any other matter pertaining to assumption, the Cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the Executory Contract or Unexpired Lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. The Debtors reserve the right to reject any Executory Contract or Unexpired Lease not later than 30 days after the entry of a Final Order resolving any such dispute.

No later than seven days after Confirmation of the Plan, the Debtors will provide for notices of proposed assumption and proposed Cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any counterparty's objection to the proposed assumption of an Executory Contract or Unexpired Lease; related Cure amount; or adequate assurance must be Filed, served, and actually received by the Debtors within 14 days of service. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have consented to such assumption or proposed Cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## C. REJECTION CLAIMS

Any counterparty to a contract or lease which is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases or is otherwise rejected by the Debtors must File and serve a Proof of Claim on the applicable Debtor that is party to the contract or lease to be rejected no later than the Rejection Damages Bar Date.

## D. RESERVATION OF RIGHTS

Neither the exclusion nor inclusion of any contract or lease in this Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

## VI.   DISTRIBUTIONS

### A.   REORGANIZED DEBTORS TO MAKE DISTRIBUTIONS

Unless ordered otherwise in the Confirmation Order, the Reorganized Debtors shall make all Distributions required by this Plan.

### B.   METHOD OF PAYMENT

Unless otherwise expressly agreed in writing, payments of Cash under this Plan shall be made by a check drawn on a domestic bank, ACH transfer, or an electronic wire. Whenever any payment, distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

### C.   OBJECTIONS TO AND RESOLUTION OF CLAIMS

The Reorganized Debtors shall have the right to File objections to Claims after the Effective Date. All objections shall be litigated to entry of a Final Order; *provided, however*, that only the Reorganized Debtors have the authority to compromise, settle, otherwise resolve, or withdraw any objections without approval of the Bankruptcy Court.

### D.   CLAIMS OBJECTION DEADLINE

The Debtors or the Reorganized Debtors, as applicable, shall have the right to object to all Claims. The Claims Objection Deadline shall be 60 days after the Effective Date; *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Reorganized Debtors.

### E.   DISPUTED CLAIMS

Notwithstanding any other provision of this Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan.

On any date that Distributions are to be made under the terms of this Plan, the Reorganized Debtors shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. The Reorganized Debtors shall also segregate any interest, dividends, or

proceeds of such Cash. Such Cash, together with any interest, dividends, or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

Except as otherwise provided herein, within the later of (i) seven (7) Days after a Claim becomes an Allowed Claim and (ii) 30 Days after the expiration of the Claims Objection Deadline, the Debtors shall distribute all Cash or other property, including any interest, dividends, or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

### F.  DELIVERY OF DISTRIBUTIONS

Except as provided herein, Distributions to Holders of Allowed Claims shall be made:

(i) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtors or Reorganized Debtors, as applicable, after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim is Filed and the Debtors or Reorganized Debtors have not received a written notice of a change of address.

### G.  UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS

If the Distribution to the Holder of any Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder unless and until the Reorganized Debtors are notified in writing of such Holder's then current address, at which time such undelivered distribution shall be made to such Holder within 90 days of receipt of such Holder's then current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and revert to the Reorganized Debtors at the expiration of six months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in this Plan, nothing in this provision shall act as a bar to entry of a Final Decree Closing the Subchapter V Cases.

### H.  SETOFF AND RECOUPMENT

From and after the Effective Date, the Reorganized Debtors may, to the extent permitted by Bankruptcy Code section 553 or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Causes of Action of any nature whatsoever that the Reorganized Debtors may have against the Holder of such Claim; *provided, however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor any other Cause of Action.

### I.  NO INTEREST

Unless otherwise explicitly provided for in this Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law,

postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## VII.   MEANS OF IMPLEMENTATION

### A. GENERAL SETTLEMENT OF CLAIMS

Unless otherwise set forth in this Plan, pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, on the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved by this Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and within the range of reasonableness.

### B. EXIT FINANCING

On the Effective Date, the Reorganized Debtor shall execute and deliver all other documents required to be issued or executed pursuant to the Subchapter V Plan, including, the Exit Credit Agreement, and such issuance, execution and delivery is hereby authorized without further act or action under applicable law, regulation, order or rule. The Reorganized Debtors shall execute and deliver such other agreements, documents and instruments as are required to be executed and/or delivered pursuant to the terms of (including, but not limited to, as a condition precedent to the effectiveness of) the Subchapter V Plan, the Exit Credit Agreement. The guarantees and Liens securing obligations under the Exit Credit Agreement and New Loan shall be as set forth in the Exit Credit Agreement. The guarantees, pledges, liens and other security interests granted and pursuant to or in connection with the Exit Credit Agreement are granted in good faith as an inducement to the holder of the New Loan to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance.

As of the Effective Date, the New Loan will be in an aggregate principal amount not to exceed $3 million. The New Loan will be borrowed pursuant to the Exit Credit Agreement. The proceeds from the New Loan will be used to (i) pay the cure of the Seguin Lease, (ii) pay Administrative Expense Claims and all other Claims necessary for the Subchapter V Plan to go effective, and (iii) fund the Reorganized Debtor's working capital and general corporate needs.

### C. PLAN FUNDING

The Debtors anticipate that all Distributions made under this Plan will be funded from the Cash on hand, the New Loan, and future earnings, which will not be less than 100% of the Debtors' projected Disposable Income for the Commitment Period. However, the Debtors reserve the right to make a lump sum payment during the Commitment Period.

### D. CONTINUED CORPORATE OPERATIONS

The Reorganized Debtors will continue to operate with the primary purpose of managing the operations of the skilled nursing and assisted living facility in Seguin, Texas.

### E. CONTINUED CORPORATE EXISTENCE

Each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of Entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date.

### F. VESTING OF ASSETS

Except as otherwise expressly provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated in this Plan or this Plan Supplement, pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), 1141(b) and (c), and any other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtors, including all claims, rights, and Causes of Action of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Subchapter V Cases or under or in connection with this Plan, shall automatically, without the notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule or any requirement of further action, vote or other approval or authorization of the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized Debtors or the other applicable Entity or by any other person (except for those expressly required pursuant hereto or by this Plan Documents), vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Liens, if any, which survive the occurrence of the Effective Date as described in this Plan. On and after the Effective Date, the Reorganized Debtors may operate their respective businesses and use, acquire, and dispose of their respective property, without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

### G. CORPORATE GOVERNANCE

The Reorganized Debtors will continue to be governed by its manager. On the Effective Date, the Debtors' officers will remain officers of the Reorganized Debtors. Additionally, certain insiders of the Debtors shall remain employed by the Reorganized Debtors. Names and compensation are as follows:

| Insider | Position | Hourly Rate & Annualized Net Income |
|---|---|---|
| AYOUBI, DIANE S | Sr Vice President Of Operations | $72.11/hour<br>$12,698.43 Annualized Net Income |
| ENGLISH, KINSER L | HR Clerical Assistant | $20/hour<br>$10,270.61 Annualized Net Income |
| ENGLISH, ROBERT L | Director of Information Technology | $14.42/hour<br>$7,304.99 Annualized Net Income |
| MCPIKE, CHRISTOPHER | Executive Director | $66,120.74 Annualized Net Income |
| MCPIKE, JON E | Chief Operating Officer | $116,721.16 Annualized Net Income |
| MCPIKE, LAURIE BETH | President/CEO | $160,153.54 Annualized Net Income |
| ENGLISH, KIELSON | Administrative Assistant | $18/hour<br>$1,880.40 Annualized Net Income |
| ENGLISH, KAYDEN | Administrative Assistant/Courier | $10.50/hour<br>$350 Annualized Net Income |

## H. Claims Objections

The Debtors or the Reorganized Debtors, as applicable, shall have the right to object to all Claims. The Claims Objection Deadline shall be 60 days after the Effective Date; *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Reorganized Debtors.

## I. Section 1145 Exemption

In accordance with Bankruptcy Code section 1145, the retention of Interests under this Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## VIII.  EFFECT OF PLAN CONFIRMATION

### A. Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

28

### B.  PLAN INJUNCTION

Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been satisfied or released pursuant to this Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates:

(a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has Filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to this Plan or that is otherwise inconsistent with the provisions of this Plan.

### C.  PROTECTED PARTY INJUNCTION

The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on account of any Claim or Cause of Action against a Protected Party in connection with or arising out of the administration of, or otherwise related to, the Subchapter V Cases; the negotiation and pursuit of this Plan and all related agreements, instruments, and other documents; the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing, and any Entity bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct. The other protections provided by this Section shall be in addition to, and shall not limit, any other releases, indemnifications, injunctions, exculpations, any and all other applicable law or rules protecting the Protected Parties from liability. For the avoidance of doubt, nothing in this Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units.

### D.  EXCULPATION

Notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated

29

Party is hereby released and exculpated from, any cause of action, Claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Subchapter V Cases, the Filing of the Subchapter V Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, Plan or any other contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the issuance of securities pursuant to this Plan, or the distribution of property under this Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have, and upon completion of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e). Notwithstanding anything contained herein, no exculpation shall be given in contravention of *Bank of N.Y. Trust Co. v. Off. Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

### E. RELEASES BY THE DEBTORS

Pursuant to Bankruptcy Code section 1123(b), and notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, and to the fullest extent permitted by applicable law, in exchange for their cooperation, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates (the "Debtor Releasing Parties") from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivate claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Subchapter V Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Subchapter V Cases, the negotiation, formulation, preparation, implementation or administration of this Plan, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (the "Debtor Release"). Notwithstanding anything

contained herein, no release shall be given in contravention of *Bank of N.Y. Trust Co. v. Off. Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

For the avoidance of doubt, the Debtor Release shall not operate to waive, release, or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by a Final Order of the Court or any other court of competent jurisdiction; and/or (ii) the Rights of such Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Court.

**F. RELEASE AND EXCULPATION INJUNCTION**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, fines, penalties, or liabilities released or exculpated pursuant to this Plan.

**G. DISCHARGE OF CLAIMS**

The Debtors shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date; however, the timing of the discharge will depend on whether this Plan is confirmed as a consensual plan or a cramdown plan pursuant to Bankruptcy Code sections 1191(a) or (b), respectively. *See* 11 U.S.C. § 1181(c).

### *(1) Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)*

If this Plan is confirmed pursuant to Bankruptcy Code section 1191(a), the Debtors shall receive a discharge pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their

31

assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### *(2)   Cramdown Plan - Discharge Under Bankruptcy Code section 1192*

If this Plan is confirmed as a cramdown plan pursuant to Bankruptcy Code section 1191(b), the Debtors shall receive a discharge "as soon as practicable after completion by the [Debtors] of all payments due within the [Commitment Period]." *See* 11 U.S.C. § 1192. Except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Unless otherwise indicated, all rejections of Executory Contracts and Unexpired Leases in this Plan will be effective Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date and the completion of all Distributions contemplated under this Plan.

### H. RETENTION, RESERVATION, AND PROSECUTION OF CAUSES OF ACTION

In accordance with Bankruptcy Code section 1123(b) or any corresponding provision of federal or state laws, and except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date, all Causes of Action shall be retained by the Debtors, and the Debtors may, in accordance with this Plan, enforce, sue on, settle, or compromise (or decline to do any

of the foregoing) any or all of such Causes of Action. The Debtors will include in this Plan Supplement a non-exhaustive list of the Causes of Action that will be retained.

Subject to the immediately preceding paragraph, any Entity to who the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of Claim against the Debtors in the Subchapter V Cases; (ii) the Debtors have objected to any such Entity's proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; or (v) any such Entity's schedule Claim has been identified by the Debtors as disputed, contingent, or unliquidated.

Except as otherwise explicitly provided in this Plan, nothing in this Plan shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Estate may have or choose to assert on behalf of the Debtors or their Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law. No entity may rely on the absence of a specific reference in this Plan to any Cause of Action or account receivable against it as an indication that the Debtors will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action or accounts receivable upon or after the confirmation or consummation of this Plan.

Prior to, on, or after the Effective Date, as applicable, all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date, as applicable, pursuant to applicable laws, without any requirement of further vote, consent, approval, authorization, or other action by such stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtors or notice to, order of, or hearing before the Bankruptcy Court.

## I.  RELEASE OF LIENS

Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors and the Reorganized Debtors.

**J.  LIABILITIES TO, AND RIGHTS OF, GOVERNMENTAL ENTITIES**

(1)     As to the United States, nothing in this Plan shall limit or expand the scope of the release or injunction to which the Debtors are entitled to under the Bankruptcy Code. The release, injunction and exculpation provisions contained in this Plan are not intended and shall not be construed to bar the United States from, subsequent to entry of the Confirmation Order, pursuing any police or regulatory action, except to the extent those release and injunctive provisions bar a governmental unit from pursuing Claims.

(2)     Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to a governmental unit under environmental law that is not a Claim; (2) any Claim of a governmental unit arising on or after the Effective Date; (3) any valid right of set-off or recoupment of the United States against a Debtor; or (4) any liability of the Debtors under environmental law to any governmental unit as the owner or operator of property that such Debtor owns or operates after the Effective Date, except those obligations to reimburse costs expended or paid by a governmental unit before the Effective Date or to pay penalties owing to a governmental unit for violations of environmental laws or regulations that occurred before the Effective Date; provided that the Debtors reserve all of their rights and defenses under applicable law with respect to any such Claims or liabilities. Nor shall anything in this Plan: (i) enjoin or otherwise bar the United States or any governmental unit from asserting or enforcing, outside the Bankruptcy Court, any liability described as not discharged in the preceding sentence, provided that the Debtors and the Reorganized Debtors reserve all of their rights and defenses under applicable law with respect to any such Claims or Liabilities; or (ii) divest any court of jurisdiction to determine whether any liabilities asserted by the United States or any governmental unit are discharged or otherwise barred by this Plan or the Bankruptcy Code.

(3)     Nothing in this Plan shall release or exculpate any non-Debtor, including the Exculpated Parties, from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Exculpated Parties, nor shall anything in this Plan enjoin the United States from bringing any claim, suit, action or other proceeding against the Exculpated Parties for any liability whatsoever.

## IX.  CONDITIONS PRECEDENT TO EFFECTIVE DATE

**A.  CONDITIONS PRECEDENT TO EFFECTIVE DATE**

The following is a list of the conditions precedent to the Effective Date of this Plan, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section IX.C of this Plan:

1.      the Confirmation Order shall have been entered by the Bankruptcy Court confirming this Plan in form and substance acceptable to the Debtors, and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

2.   all governmental and material third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by this Plan shall be in full force and effect (which, in the case of an order of judgment of any Court, shall mean a Final Order), and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

3.   all documents and agreements necessary to implement this Plan shall have (a) been tendered for delivery, and (b) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of this Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

4.   no stay of the Confirmation Order shall then be in effect, and the Confirmation Order has become a Final Order.

## B.   WAIVER OF CONDITIONS PRECEDENT

The conditions to the Effective Date set forth in this Article IX may be waived only by consent of the Debtors without any notice to other parties in interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate this Plan. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion). The failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

## C.   EFFECT OF NONOCCURRENCE OF CONDITIONS

If the Effective Date does not occur, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## X.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Subchapter V Cases for, among other things, the following purposes:

1.    to hear and determine all matters relating to the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance of Cure amounts and Claims resulting therefrom;

2.    to hear and determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

3.    to Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against or Interest in a Debtor, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Interests;

4.    to ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan;

5.    to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

6.    to hear and determine any application to modify this Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

7.    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

8.    to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

9.    to issue orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan;

10.     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

11.     to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

12.     to determine any other matters that may arise in connection with or are related to this Plan, the Confirmation Order, any of this Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan or this Plan Supplement;

13.     to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Subchapter V Cases, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

14.     to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Subchapter V Cases (whether or not the Subchapter V Cases have been closed);

15.     to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

16.     to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

17.     to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Subchapter V Cases with respect to any Person;

18.     to hear any other matter related to this Plan and not inconsistent with the Bankruptcy Code; and

19.     to enter a Final Decree closing the Subchapter V Cases.

## XI.     MISCELLANEOUS PROVISIONS

### A.   AMENDMENT OR MODIFICATION OF THIS PLAN

Alterations, amendments, or modifications of this Plan may be proposed in writing by the Debtors at any time before the Confirmation Date; provided that this Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123 and the Debtors shall have complied with Bankruptcy Code section 1125. The Debtors may modify this Plan at any time after Confirmation and before substantial consummation, provided that this Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or

modification does not materially and adversely change the treatment of the Claim of such Holder.

### B. PLAN SUPPLEMENT

Draft forms of certain documents, agreements, instruments, schedules and exhibits specified in this Plan shall, where expressly so provided for in this Plan, be contained in this Plan Supplement Filed from time to time and shall be incorporated into the Plan. Unless otherwise expressly provided in this Plan, the Debtors may File any Plan Supplement until seven (7) days prior to the voting deadline and may alter, modify or amend any Plan Supplement in accordance with this Plan. Holders of Claims or Interests may obtain a copy of this Plan Supplement on the Debtors' website at https://cases.omniagentsolutions.com/?clientId=3697.

### C. ADDITIONAL DOCUMENTS

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### D. GOVERNING LAW

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent this Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provide otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

### E. TIME

To the extent that any time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

### F. SEVERABILITY

If any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as

it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### G. Revocation

The Debtors reserve the right to revoke and withdraw this Plan prior to the entry of the Confirmation Order. If the Debtors revoke or withdraw this Plan, this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

### H. Reservation of Rights

This Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan or this Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

### I. Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### J. Service of Documents

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| | |
|---|---|
| Debtors | Remarkable Healthcare, LLC<br>904 Emerald Blvd.<br>Southlake, TX 76092<br>Attention: Jon Eric McPike |
| Counsel to Debtors | Gutnicki LLP<br>8080 N. Central Expy., Suite 1700<br>Dallas, Texas 75206<br>Attention: Liz Boydston and Alex Rahn<br>lboydston@gutnicki.com<br>arahn@gutnicki.com |
| | Gutnicki LLP<br>45 Rockefeller Plaza, Suite 200<br>New York, New York 10111<br>Attention: Max Schlan<br>mschlan@gutnicki.com |

| | |
|---|---|
| United States Trustee | Office of the United States Trustee |
| | 110 N. College Ave., Suite 300 |
| | Tyler, TX 75702 |
| | Attention: John M. Vardeman |
| | john.m.vardeman@usdoj.gov |
| Subchapter V Trustee | |
| | Subchapter V Trustee |
| | 10501 N Central Expy., Suite 106 |
| | Dallas, TX 75231-2203 |
| | Attention: Mark A. Weisbart |
| | mweisbart@haywardfirm.com |

## K. ENTIRE AGREEMENT

Except as otherwise indicated, on the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of this Plan, all of which will have become merged and integrated into this Plan on the Effective Date.

## L. INCONSISTENCY

To the extent the Confirmation Order and/or this Plan is inconsistent with any other agreement entered into between the Debtors and any third party, this Plan shall control any previous agreements and the Confirmation Order shall control this Plan.

## M. DEFAULT

No default in the performance of this Plan shall automatically result in the termination of this Plan or constitute a revocation of the Confirmation Order. Unless otherwise specified in this Plan, if any party in interest believes that the Debtors/Reorganized Debtors are in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtors/Reorganized Debtors and Counsel to the Debtors prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court enforcement of the terms of this Plan.

## N. POST-CONFIRMATION DISTRIBUTION REPORTS

The Reorganized Debtors will file post-confirmation distribution reports within 45 days of making any Distribution under this Plan and shall comply with Local Rule 3022-1 when seeking a Final Decree.

Executed this 6th9th day of January, 2025.      _/s/ Laurie Beth McPike_____
Dallas, Texas                                    Laurie Beth McPike

40

Chief Executive Officer
Remarkable Healthcare, LLC

And

*/s/ Jon E. McPike*
Jon E. McPike
Chief Operating Officer
Remarkable Healthcare, LLC

# **EXHIBIT A**

Projected Disposable Income

## EXHIBIT B

Liquidation Analysis

| Summary report: Litera Compare for Word 11.2.0.54 Document comparison done on 1/9/2025 10:11:21 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Third Amended Draft Subchapter V plan - Seguin and LLC.docx | |
| **Modified filename:** Fourth Amended Draft Subchapter V plan - Seguin and LLC.docx | |
| **Changes:** | |
| Add | 12 |
| Delete | 14 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 26 |