IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CHAPTER 11 |
| REMARKABLE HEALTHCARE OF SEGUIN, LP AND REMARKABLE HEALTHCARE, LLC,[1] | § § § § § | CASE NOS. 24-40611 & 24-40612 |
| DEBTORS. | § § | |

**DEBTORS' OBJECTION
TO CLAIM NO. 14-2 FILED BY MUSTANG NH, LLC, GMP DALLAS NH, LLC,
WAG DEVELOPMENT, LTD. AND GUADALUPE NH DEVELOPMENT, LTD.**

**30-DAY NEGATIVE NOTICE – LBR 3007(b):**

**ATTENTION: YOUR CLAIM MAY BE REDUCED, MODIFIED, OR ELIMINATED. Accordingly, you should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you do not wish for the Court to eliminate or change your claim, you must file a written response opposing the claim objection, explaining the factual and/or legal basis for that response.**

**No hearing will be conducted on this claim objection unless a written response in opposition is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading WITHIN THIRTY (30) DAYS FROM THE DATE OF SERVICE listed in the certificate of service unless the Court shortens or extends the time for filing such response. If no response in opposition is timely served and filed, this claim objection shall be deemed to be unopposed, and the Court may enter an order sustaining the objection to your claim. If a response in opposition is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your response in opposition may be stricken. The Court reserves the right to set a hearing on any matter.**

The above-captioned debtors and debtors in possession Remarkable Healthcare of Seguin, LP ("**RH Seguin**") and Remarkable Healthcare, LLC ("**RH LLC**") (collectively, the "**Debtors**")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Seguin, LP (4566) and Remarkable Healthcare, LLC (5142).

hereby file this objection (this "**Objection**") to Claim No. 14-2 in Case Number 24-40612 of Mustang NH, LLC, GMP Dallas NH, LLC, WAG Development, Ltd. and Guadalupe NH Development, Ltd. (altogether, the "**Former Landlord**,") seeking $995,867.80 ("**Former Landlord's Claim**"). In support of the Objection, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Debtors object to the Former Landlord's Claim (attached hereto as **Exhibit B**) for the following reasons:

2. *First*, the Former Landlord's Claim is deficient because it alleges that RH Seguin, as well as Remarkable Healthcare of Carrollton, LP ("**RH Carrollton**"), Remarkable Healthcare of Fort Worth, LP ("**RH Fort Worth**"), and Remarkable Healthcare of Dallas, LP ("**RH Dallas**," collectively with RH Carrollton and RH Fort Worth, the "**DFW Debtors**," and together with RH Seguin and RH LLC, "**Remarkable**") is each separately liable for the entire amount due under the so-called Griffin Note (defined below).

3. The Griffin Note, however, clearly and specifically separates the amounts owed by each Remarkable entity.

4. At a minimum, the Court should reduce the Former Landlord's Claim to reflect the amount owed specifically by RH Seguin for the Seguin Lease (defined below).

5. *Second*, to the extent that Former Landlord's Claim encompasses or is duplicative of any amounts claimed via Claim No. 5-1 in Case Number 24-40612 filed by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, KRS Seguin LLC (altogether, "**KRS**" or the "**KRS Landlord**") seeking $3,149,911.71 ("**KRS's First Claim**") or Claim No. 15-1 in Case Number 24-40612 filed by KRS Seguin, LLC seeking $3,625,604.53 ("**KRS's Second Claim**," and collectively with KRS's First Claim, the "**KRS's Claims**"), Debtors object.

6. Former Landlord also incorrectly argues that the Seguin Cure Amount includes the Former Landlord's Claim, which is based on an unsecured promissory note that was <u>un</u>purchased by KRS Seguin, <u>un</u>assumed by KRS Seguin, and <u>un</u>assigned to KRS Seguin. The unsecured promissory note is not part of the Seguin Lease and is not required to be cured for the Debtors to assume the Seguin Lease, nor is it entitled to any special secured or administrative designation in these cases.

7. *Last*, if this Court allows the Former Landlord's Claim, the claim must be capped in accordance with the statutory limit set forth under 11 U.S.C. § 502(b)(6).

## JURISDICTION AND VENUE

8. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

9. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

10. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a) and 502 and Bankruptcy Rule 3007.

## BACKGROUND

A. **GENERAL BACKGROUND**

11. On March 20, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief and electing treatment under subchapter V of chapter 11 of the Bankruptcy Code (the "**Cases**").

12. On March 26, 2024, the Office of the United States Trustee for the Eastern District of Texas appointed a Subchapter V trustee in the Cases (the "**Subchapter V Trustee**").

13. On March 27, 2024, the Court entered an order directing joint administration of the Debtors' and the DFW Debtors' cases under case no. 24-40605. *See* Case No. 24-40605, Dkt. 36.

14. On April 26, 2024, RH Fort Worth ceased operations, and the last resident relocated. The Fort Worth Lease was rejected on April 19, 2024, and RH Fort Worth turned over the property to the KRS Landlord.

15. On May 13, 2024, the operations for RH Carrollton and RH Dallas transitioned to new management, controlled by the KRS Landlord, pursuant to the terms of the Amended Show Cause Order entered on May 10, 2024, and as amended May 14, 2024. *See* Case No. 24-40605, Dkts. 105 and 106.

16. On October 10, 2024, the Court entered the *Order Granting the DFW Debtors' Emergency Motion to Convert Chapter 11 Cases to Chapter 7* [Case No. 24-40605, Dkt. 423], converting the DFW Debtors' cases to chapter 7. Contemporaneously therewith, the Court amended the *Order Directing Joint Administration of the Cases* to jointly administer RH Seguin's and RH LLC's cases under case number 24-40611. *Id.*

17. On December 18, 2024, this Court dismissed the DFW Debtors' cases. [Case No. 24-40605, Dkt. 464; Case No. 24-40608, Dkt. 79; and Case No. 24-40610, Dkt. 76].

18. Debtors RH Seguin and Remarkable Healthcare, LLC ("**RH LLC**") continue to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

**B. THE LEASES**

19. RH Seguin, RH Carrollton, RH Fort Worth, and RH Dallas *separately* entered into *four (4) different leases* with *four (4) different landlords* on *four (4) different dates*. RH LLC is not obligated under any lease.

20. First, the Lease Agreement and Security Agreement by and between Guadalupe NH Development, Ltd and LBJM, L.L.C., dated July 8, 2010, was entered to lease the property with the common street address 1339 Eastwood Drive, Seguin, Guadalupe County, Texas 78155 (the "**Seguin Lease**"), a true and correct copy is attached hereto as **Exhibit C**. The Seguin Lease was then assigned via an Assignment of Lease Agreement and Security Agreement, dated July 8, 2010, by and between LBJM, LLC (as the Assignor) and RH Seguin (as the Assignee).

21. Second, the Lease Agreement and Security Agreement by and between WAG Development, Ltd. and Remarkable Healthcare of Fort Worth, LP, dated December 13, 2010, was entered to lease the property with the common address of 6649 North Riverside Drive, Fort Worth, Tarrant County, Texas 76137 (the "**Fort Worth Lease**"), a true and correct copy is attached is attached hereto as **Exhibit D**.

22. Third, the Lease Agreement and Security Agreement by and between GMP Dallas NH, Ltd. and Remarkable Healthcare of Dallas, LP, dated March 9, 2012, was entered to lease the property with the common address of 3350 Bonnie View Road, Dallas County, Texas 75216 (the "**Dallas Lease**"), a true and correct copy is attached hereto as **Exhibit E**.

23. Fourth, the Lease Agreement and Security Agreement by and between Mustang NH, LLC and Remarkable Healthcare of Carrollton, LP, dated March 13, 2013, was entered to lease the property with the common address of 4501 Plano Pkwy., Carrollton, Denton County, TX 75010 (the "**Carrollton Lease**"), a true and correct copy is attached hereto as **Exhibit F**.

24. The Fort Worth Lease, the Dallas Lease, and the Carrollton Lease are collectively referred to herein as the "**DFW Debtors' Leases**."

C. **THE 2018 BANKRUPTCY GRIFFIN NOTE AND THE 2022 ASSIGNMENT OF THE LEASES WITHOUT THE GRIFFIN NOTE.**

25. On February 12, 2018, Debtors and the DFW Debtors each filed voluntary petitions for relief, jointly administered under Case No. 18-40295 (the "**2018 Bankruptcy Cases**"). The Court confirmed that plan on May 16, 2019, and the cases were closed on April 4, 2020.

26. In the 2018 Bankruptcy Cases, the confirmed plan included an agreement in the form of an unsecured Promissory Note executed May 10, 2019, and effective May 31, 2019, to cure (the "**Griffin Note**") the Seguin Lease, the Fort Worth Lease, the Carrollton Lease, and the Dallas Lease (altogether, the "**Leases**"). *See* Ex. I, pp. 6–8 of 29.

27. On November 21, 2022, despite amounts remaining outstanding under the Griffin Note, the Former Landlord assigned the Leases to KRS Seguin, KRS Fort Worth LLC, KRS Dallas LLC, and KRS Carrollton LLC, respectively, but did not also assign the Griffin Note. *See, e.g.,* Assumption and Assignment of Lease for Seguin facility, a true and correct copy is attached hereto as **Exhibit G**;[2] *see also* Letter Re: Notice of amounts due (Nov. 30, 2022), a true and correct copy is attached hereto as **Exhibit H** (the "**Notice Letter**") (stating "nor did the Current Landlords purchase the promissory note referred to therein").

28. Indeed, on August 9, 2024, KRS's principal Josh Kilgore testified under oath at a hearing on KRS's Motion for Relief from the Automatic Stay, that the manager of the Former Landlord, Mr. Rick Griffin, retained the Griffin Note. *See* Transcript of Hearing (Aug. 9, 2024) at

---

[2] The Assumption and Assignment of Lease agreements for the other three facilities are materially identical to the Assumption and Assignment of the Seguin facility lease, except that the names of the relevant entities and addresses are modified accordingly to match the Leases.

176:7–16, a true and correct copy of the transcript excerpt is attached hereto as **Exhibit I**; *see also* Ex. H, Notice Letter.

### D. BAR DATE

29. On March 27, 2024, the Court entered a Notice of Chapter 11 Bankruptcy Case (the "**Notice**," Dkt. 15) fixing the general proof of claim deadline for May 29, 2024 (the "**General Bar Date**"). Notice of the General Bar Date was provided by mail and publication. To date, approximately 124[3] proofs of claim (collectively, the "**Proofs of Claim**") have been filed asserting claims against Remarkable (collectively, the "**Claims**"). Approximately 35 of the 124 total Claims filed were filed against either RH Seguin or RH LLC.

30. In the ordinary course of business, the Debtors maintain books and records (the "**Books and Records**") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

31. The Debtors' claims agent, Omni Agent Solutions (the "**Claims Agent**"), has prepared and maintains a register of Proofs of Claim that were filed in these Cases asserting Claims against the Debtors. The Debtors and their advisors are comprehensively reviewing and reconciling all Claims, including both the Claims listed on the Schedules (the "**Scheduled Claims**") and the Claims asserted in the Proofs of Claim (including any supporting documentation) filed in these Cases. The Debtors also are comparing the Claims asserted in the Proofs of Claims with their Books and Records to determine the validity of the asserted Claims.

---

[3] The approximate number of proofs of claim filed for each debtor is: Remarkable Healthcare of Carrollton—36; Remarkable Healthcare of Dallas—28; Remarkable Healthcare of Fort Worth—25; Remarkable Healthcare of Seguin—25; and Remarkable Healthcare, LLC—10.

E. **FORMER LANDLORD'S PROOF OF CLAIM**

32. On August 9, 2024, the Former Landlord filed the **Former Landlord's Claim** against RH Seguin for $995,867.80 based on the Griffin Note. *See* Case No. 24-40612, Claim 14-2, Ex. I. The amount claimed in the Former Landlord's amended claims did not change; rather, he added an additional exhibit showing the breakdown of the alleged principal per facility. It shows principal amounts due as follows:

| RH Carrollton | Mustang NH, LLC | $363,318.77 |
| RH Dallas | GMP Dallas NH, Ltd. | $193,334.95 |
| RH Fort Worth | WAG Development Ltd. | $248,122.56 |
| RH Seguin | Guadalupe NH Development, Ltd. | $190,326.93 |

33. While the Former Landlord's Claim against RH Seguin appears to be for the total amount outstanding under the Griffin Note, communications from Mr. Carruth received Monday night, January 6, 2025, at 10:37 p.m., 10:52 p.m., and 10:57 p.m. seem to reduce the amount of the Griffin Note asserted by Mr. Carruth needed to be included in the Seguin Cure Amount as $190,326.93.

F. **COUNSEL TO THE FORMER LANDLORD HAS A CONFLICT OF INTEREST.**

34. Former Landlord's counsel possesses a conflict of interest that precludes resolution of the current Seguin cure amount (the "**Seguin Cure Amount**"). Jeffrey Carruth, counsel for Former Landlord in these Cases, is also counsel for KRS in these Cases and has filed Proofs of Claim in these Cases for $3,149,911.71 (KRS's First Claim)[4] and $3,625,604.53 (KRS's Second Claim)[5] on behalf of KRS. Despite KRS's testimony that the Griffin Note was not assumed or assigned by KRS and despite efforts to resolve the Seguin Cure Amount for the Debtors to assume the Seguin Lease and confirm their plan, Mr. Carruth has been unwilling to resolve the Seguin

---

[4] Claim No. 5-1 in Case Number 24-40612 filed by KRS Carrollton LLC, KRS Dallas LLC, KRS Fort Worth LLC, KRS Seguin LLC (altogether, "**KRS**" or the "**KRS Landlord**").
[5] Claim No. 15-1 in Case Number 24-40612 filed by KRS Seguin, LLC.

Cure Amount due to the unresolved claim of his conflicting client—the Former Landlord, which claim Mr. Carruth asserts is a mandatory part of the Seguin Cure Amount (again, despite his client KRS's testimony that the Griffin Note was not assigned to or assumed by KRS). It has become apparent that the conflict is so great that even if the Debtors get full agreements with KRS on the Seguin Cure Amount and rent going forward, neither will withdraw their objection. Indeed, Mr. Carruth is so conflicted that he is holding up confirmation to appease his conflicting client, the Former Landlord, at the great expense of the Estates.

35. For the reasons set forth in more detail below and based on the review done by the Debtors and their representatives, counsel, and advisors, the Debtors have determined that the Former Landlord's Claim is objectionable and should be disallowed.

## RELIEF REQUESTED

36. By this Objection, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (1) disallowing part or all of Former Landlord's Claim as being duplicative, containing improper set-off amounts, and/or improper calculations; or (2) in the alternative, following Former Landlord's production of the necessary supporting evidence, indicating the validity or non-duplicative basis for their Claim, limiting the amount to the limits set by § 502(b)(6).

## BASIS FOR RELIEF REQUESTED

**A. THE FORMER LANDLORD'S PROOF OF CLAIM IS NOT SUPPORTED BY ADEQUATE DOCUMENTATION.**

37. Bankruptcy Code section 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). *See also* Fed. R. Bankr. P. 3001(f) (a properly executed and filed proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim"); *In re O'Connor*, 153

F.3d 258 (5th Cir. 1998). However, "[i]t is elemental that a proof of claim must assert facts or allegations . . . which would entitle the claimant to a recovery." *In re Heritage Org., L.L.C.*, Case No. 04-35574 (BJH), 2006 WL 6508477, at *8 (Bankr. N.D. Tex. Jan. 27, 2006), *aff'd sub nom*, *Wilferth v. Faulkner*, Civ. No. 3:06-CV-510-K, 2006 WL 2913456 (N.D. Tex. Oct. 11, 2006). Failure to itemize interest in accordance with the rules means that the proof of claim is not *prima facie* evidence of the claim's validity and amount. *In re Sherman*, 639 B.R. 618, 622 (Bankr. N.M. 2022).

38. A chapter 11 debtor has a duty to object to the allowance of any claim which is improper. *See* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and 1107(a). "[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount." 11 U.S.C. § 502(b).

39. When an objection relating to the claim's underlying sufficiency is asserted, the burden of proof shifts to the claimant, who must prove, by a preponderance of the evidence, the claim's validity. *In re Starnes*, 231 B.R. 903, 912 (N.D. Tex. 1998). *See also In re Armstrong*, 347 B.R. 581, 581 (Bankr. N.D. Tex. 2006) ("[T]he ultimate burden of proof always lies with the claimant."). Under Bankruptcy Code section 502(b)(1), a claim may not be allowed to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). *See, e.g.*, *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1110 (7th Cir. 2014) (determining that an unenforceable claim was disallowed).

40. First, the Former Landlord's proof of claim does not provide why RH Seguin would owe the entire amount due on the Griffin Note when the claim itself shows that RH Seguin was only ever required to pay principal in the max amount of $292,811.13. *See* Ex. I at p. 7. This

argument is further bolstered by the fact that the Former Landlord's and KRS's counsel only asserted that $190,326.93 was necessary to include in the Seguin Cure Amount when he spoke with Debtors' Counsel on the evening of January 6, 2025. Here, thus, the Former Landlord failed to provide sufficient evidence to support the validity of its Claim for the full approximately $995,000 claim.

### B. THE FORMER LANDLORD'S CLAIM IS NOT A SECURED CLAIM.

41. In order for a security interest to be enforceable against the debtor, there must be a security agreement covering the collateral. TEX. BUS. & COMM. CODE § 9.203(b). A security agreement must reasonably identify the collateral to be enforceable against the debtor. TEX. BUS. & COMM. CODE § 9.108. A description that is too broad, such as identifying the collateral as "all the debtor's assets" or "all the debtor's personal property" is insufficient as a matter of law. *Id*. at § 9.108(c).

42. The Former Landlord has stated no basis upon which it alleges to hold a perfected security interest in any of the Debtors' assets, and Former Landlord failed to attach any documentation to support its alleged security interest in the Debtors or their assets. The Former Landlord appears to base its claims on a cure note executed in conjunction with the Debtors' 2018 Bankruptcy Cases. The Former Landlord does not, however, attach any documentation that shows this cure note was properly perfected, is secured, or was purchased or assumed by KRS Seguin or assigned to KRS Seguin.

43. To the extent the Former Landlord alleges it holds, or actually holds, a statutory lien under Texas law (the "**Statutory Lien**"), such Statutory Lien is a lien for rent. The Debtors may avoid the Statutory Lien under Bankruptcy Code § 545(3), which states that "[t]he [debtor in possession] may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien . . . (3) is for rent." 11 U.S.C. § 545(3). Furthermore, the Former Landlord would hold a

Statutory Lien pursuant to Tex. Rev. Civ. Stat. art. 5238, but to maintain this lien for rents that are more than six months past due, a landlord is required to file a sworn, itemized statement of the amount of rent due with the county clerk. *See McKesson-Crowdus Drug Co. v. Newman*, 86 S.W.2d 881, 882 (Tex. Civ. App. 1935). Failure to file this statement before the expiration of six months causes a landlord to lose his right to a superior lien against unsecured and lien creditors who acquire rights prior to the filing of such a verified claim with the county clerk. *Id*.

44. Accordingly, here, any amounts due for rent prior to the Petition Date must have a statement filed with the county clerk to be considered a priority or secured claim. *See* TEX. REV. CIV. STAT. ART. 5238. Upon information and belief, the Former Landlord has filed no such statement with the appropriate county clerk. The Former Landlord, therefore, does not hold a valid, perfected security interest in any of the Debtors' property. Furthermore, the Debtors request that, to the extent applicable, the Court enter an order in the Debtors' favor avoiding any Statutory Lien pursuant to rent under Bankruptcy Code § 545(d).

C. **THE GRIFFIN NOTE IS NOT PART OF THE LEASE AND IS NOT ENTITLED TO ANY SPECIAL SECURED OR ADMINISTRATIVE DESIGNATION IN THESE CASES.**

45. The fact that the Griffin Note was executed in conjunction with the Debtors' prior reorganization plan does not grant the Griffin Note any special secured or administrative designation in these Cases. As the court in *Official Comm. of Unsecured Creditors of Toy King Distribs. v. Liberty Sav. Bank* explained:

> The estate in a subsequent case contains all of the assets that the reorganized debtor holds upon the filing of the petition in that second case. These assets are then administered for the purpose of paying claims of that estate in accordance with the priorities as set forth in Section 507. In the later case, "the entity's unpaid liabilities under the first case plan become general unsecured claims."

256 B.R. 1, 104 (Bankr. M.D. Fla. 2000) (quoting *Official Committee of Unsecured Creditors of White Farm Equipment Co. v. United States (In re White Farm Equipment Co.)*, 943 F.2d 752, 757 (7th Cir. 1991) (quoting *In re Jartran*, 76 B.R. 123, 125 (N.D. Ill. 1987))).

46.     Moreover, it is not necessary for RH Seguin to cure the Former Landlord's Griffin Note to assume the Seguin Lease, because a note is not an executory contract if the only performance that remains is repayment. *In re Pennsylvania Tire Co.*, 26 B.R. 663, 674 (Bankr. N.D. Ohio 1982) (citing House Report No. 95-595, 95th Cong., 1st Sess. (1977) 347, U.S. Code Cong. & Admin. News 1978, pp. 5787, 6303-04).

47.     Furthermore, Mr. Griffin, representative for the Former Landlord, admitted under oath at a hearing in these Cases that he did not sell, assign, or otherwise transfer the Griffin Note with KRS's assumption and assignment of the Leases in November of 2022. This is further evidenced by the Notice Letter, *supra*, written by counsel to KRS to the Debtors shortly after KRS assumed the Debtors' Leases. *See* Ex. H. More specifically, the Notice Letter states, in relevant part:

> "The Current Landlords did not assume the Rent Reduction and Note Deferment Agreement, **nor did the Current Landlords purchase the promissory note referred to therein**."

*Id*. (emphasis added).

48.     Since KRS Seguin did not assume or purchase the Griffin Note, the Griffin Note is not part of the Seguin Lease, the Debtors do not assume the Griffin Note, and the Debtors are not obligated to pay the Griffin Note to cure and assume the Seguin Lease.

### D. THE FORMER LANDLORD'S CLAIM AND KRS'S CLAIMS ARE DUPLICATIVE.

49.     The Former Landlord's Claim is based on the same leases as KRS's Claims. The Former Landlord's Claim is in the amount of $995,867.80, which appears to represent the sum of $993,103.21 (the combined principal balance due) + $2,764.59 (late fee of five percent 5%).

Similarly, at least KRS's First Claim is based on minimum past-due lease amounts. The Claims are duplicative, at least in part, and thus should be rejected unless and until both the Former Landlord and the KRS Landlord (together, the "**Landlords**") can provide the necessary documentation and calculations evidencing otherwise. The fact that both Landlords share the same counsel is another indication that the Claims overlap. Inarguably, claimants are not allowed to submit duplicative proofs of claims. *See, e.g., In re Dronebarger*, 2011 Bankr. LEXIS 452, at *10-11 (Bankr. W.D. Tex. 2011) (determining that claimants are entitled to only one recovery on duplicative proofs of claim).

E. **TO THE EXTENT THAT THE FORMER LANDLORD'S CLAIM IS ALLOWED, IT MUST BE SUBJECT TO THE 11 U.S.C. § 502(B)(6) STATUTORY CAP.**

50. The statutory cap provided by 11 U.S.C. § 502(b)(6) should limit the Former Landlord's Claim. Section 502(b)(6) of the Bankruptcy Code states:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that…
> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
>   (i) the date of the filing of the petition; and
>   (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

51. Bankruptcy Code Section 502(b)(6) provides that "damages resulting from the termination of a lease of real property" are subject to the statutory cap. *See* 11 U.S.C. § 502(b)(6). Some courts have held that the section 502(b)(6) cap applies to all damages of any kind that are sought by a landlord, regardless of whether the damages are attributable to a lease termination or

instead are attributable to other events or factors. *See, e.g., In re Foamex Int'l, Inc.*, 368 B.R. 383, 393-394 (Bankr. D. Del. 2007) (holding that a rejection results in a breach of all covenants of a lease and that any claim for breach of any covenant is covered by the section 502(b)(6) cap). The stronger interpretation, and the one dictated by the plain language of the statute, is that the statutory cap applies only to damages that are attributable to the fact that the term of the lease has come to an end. The Court of Appeals for the Ninth Circuit has adopted a simple test for this purpose: "Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?" *See In re Rock & Republic Enters.*, 2011 Bankr. LEXIS 2401, at *80 (quoting *Saddleback Valley Cmty. Church v. El Toro Materials Co. (In re El Toro Materials Co.)*, 504 F.3d 978, 980-981 (9th Cir. 2007)).

    52.    Thus, to the extent that the Former Landlord's Claim is damages resulting from the termination of the leases, those damages must be capped pursuant to 11 U.S. Code § 502(b)(6).

## RESERVATION OF RIGHTS

This Objection only addresses certain of the claims listed in the Former Landlord's Claim, and the Debtors' omission of a specific response to the unaddressed claims listed in the Former Landlord's Claim shall not be considered an acquiescence, agreement, or admission to any such claim, nor is it a waiver of the Debtors' right to address, respond, or reply to any claims listed in the Former Landlord's Claim or any joinder thereto. The Debtors reserve their rights to amend and/or supplement this Objection.

## CONCLUSION

**WHEREFORE**, Debtors respectfully request that the Court enter an order: (a) disallowing the Former Landlord's Claim in its entirety; and (b) granting the Debtors such other and further relief as this Court may deem just and proper.

Dated: January 12, 2025
      Dallas, Texas

**GUTNICKI LLP**

*/s/ Liz Boydston*
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
8080 N Central Expy., Ste. 1700
Dallas, Texas 75206
Telephone: (469) 895-4413
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

-and-

Max Schlan (admitted *Pro Hac Vice*)
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com

*Counsel for the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that on January 12, 2025, I caused to be served the foregoing Objection via CM/ECF email upon all parties accepting said service, including (a) the Office of the United States Trustee for the Eastern District of Texas; (b) the Office of the Attorney General of Texas; (c) the Debtors' 20 largest unsecured creditors on a consolidated basis; (d) the Internal Revenue Service; (e) the Subchapter V Trustee; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. To the extent one of the above has not consented to service via CM/ECF, I caused the foregoing to be served via U.S.P.S.

      /s/ *Liz Boydston*
      Liz Boydston